## MOBILE & GIRARD R. R. COMPANY *vs.* PEEBLES.

[BILL IN EQUITY TO SET ASIDE AND CANCEL TAX-COLLECTOR'S SALE AND DEED.]

1. *Act of Feb.* 9, 1870, *amending revenue law of* 1868 ; *constitutionality of.*
   The act of the general assembly approved February 9, 1870, entitled
   " An act to amend an act entitled ' An act to establish revenue laws
   for the State of Alabama,' " is not violative of any constitutional pro-
   vision ; it does not invade the executive powers in remitting penalties
   already incurred in the non-payment of taxes for the year 1869 ; it
   does not exempt the property of railroads from taxation ; it does not
   impair any vested right ; it relates to but one subject, and that is suf-
   ficiently set forth in the title.
2. *Removal of cloud from title to land ; when equity will entertain bill for.*
   Where the property of a railroad company has been sold by the tax-
   collector, for the non-payment of taxes which have been remitted, by
   act of the legislature, before the sale ; and the purchaser makes no at-
   tempt to assert his right to the property, but allows the company to
   retain possession,—a court of equity will entertain a bill by the rail-
   road company to annul the sale, cancel the deed made to the pur-
   chaser, and enjoin him from asserting any claim to the property.

APPEAL from the Chancery Court of Bullock.
Heard before the Hon. B. B. McCRAW:

THE bill in this case was filed by the appellant against
Howell Peebles, the county of Bullock, the probate judge,
and the tax-collector of said county ; and sought to annul
and set aside a sale of the complainant's " right of way,
main track, side track, and warehouses, lying in or running
through said county ;" which sale was made by the tax-
collector of said county, on the 7th March, 1870, on ac-
count of an alleged default by the railroad company in
the payment of county taxes assessed for the year 1869 ;
and it also sought the cancellation of a deed, by which the
said property was conveyed to said Howell Peebles as the
purchaser at the tax-collector's sale, and an injunction
to restrain any further proceedings by any of the defend-
ants to collect said tax, or to enforce said sale. The com-
plainant claimed that the tax was remitted by the act of

the legislature approved February 9, 1870, which is as follows:

" AN ACT to amend ' An act to establish revenue laws for the State of Alabama.'

" *Be it enacted by the General Assembly of Alabama*, That section twenty-four of ' An act to establish revenue laws for the State of Alabama,' approved December 31st, 1868, which is in the following words, to-wit : ' That the president and secretary of every railroad company, whose track or road bed, or any part thereof, is in this State, shall annually, in the month of April, return to the auditor of State, under their oaths, the total length of such railroad, the total length and value of such road, including right of way, road bed, side track and main track in this State, and the total length and value thereof in each county, city and incorporated town in this State ; they shall also make returns of the number and value of all their locomotive engines, passenger, freight, platform, construction and other cars, and the value thereof shall be apportioned by the auditor pro rata to each mile of main track, and the auditor of state shall notify the assessors of each county through which such railroad runs, of the number of miles of track and value thereof, and the proportionate value of personal property, taxable in their respective counties, and to such values thus apportioned the assessor shall add the value of all other real property, except the land donated by congress and herein exempted, together with all fixtures, machinery, tools and other property within their respective counties ; and upon the value thus ascertained taxes shall be assessed, the same as upon the property of individuals, and any agent of said company is authorized to pay such tax to the collector, and retain the amount out of any money in his possession belonging to such road,' be and the same is hereby amended so as to read as follows : Be it further enacted, That the president and secretary, or receiver of every railroad company, whose track or road bed, or any part thereof, is in this State, shall annually, in the month of April, return to the auditor of state, under their oaths, the total length of such railroad,

the total length and value of such roads, including right of way, road bed, side track, and main track in this State, and the total length and value thereof in each county, city and incorporated town in this State ; they shall also make return of the number and value of all their locomotive engines, passenger, freight, platform, construction and other cars ; and the total value so ascertained shall be submitted by the auditor to the board of equalization, as provided in section 24 of the act aforesaid, and the same shall be assessed for State purposes only, by the auditor, the same as the property of individuals, and the tax shall become payable by each railroad company to the auditor, and shall be subject to the same rules and penalties as are prescribed for payment of other State taxes, and the auditor shall be entitled to any and all remedies granted in the aforesaid act to tax collectors : *Provided, however,* The president, secretary or receiver of each railroad company shall make a full return to the tax assessor of each county through which the said road may be located, of all real property, except the lands donated by congress and herein exempted, together with station houses and machine shops, and also lands outside of the right of way.

" SEC. 2. *Be it further enacted,* That the tax now levied by the several counties of the State upon railroad property, as certified from the auditor's office for the tax year 1869, and all the penalties which may have been incurred therein, is hereby released ; provided that the railroad companies shall pay State and county taxes upon the property enumerated for assessment by the county assessors, as described in the proviso to the first section of this act.

" SEC. 3. *Be it further enacted,* That all taxes provided for in this act shall become due and payable on the first day of January of each year, and shall become delinquent on the first day of February in each year, and on the second day of February there shall be added to, and collected with, all delinquent taxes, a penalty of ten (10) per cent. on the amount of such delinquent taxes; *Provided,* That the tax for 1869 shall become delinquent on the first day

of March, 1870, and the penalty shall attach from and after March 2d, 1870.

"SEC. 4. *Be it further enacted,* That no tax under the provisions of this act shall be assessed or collected upon any railroad now being constructed, or which may hereafter be constructed, until twenty miles of such road shall be completed and in operation. The provisions of this section, however, shall not apply to any railroads which are less than twenty miles in length.

"SEC. 5. *Be it further enacted,* That all laws or parts of laws now in force, in conflict with this act, are hereby repealed.

"Approved, February 9, 1870."

The chancellor held the act unconstitutional, and therefore dismissed the bill, on demurrer, for want of equity ; and his decree is now assigned as error.

WATTS & TROY, for appellant.—1. The legislature, under our constitution, has all powers of legislation which any government can possess, except alone in those particulars in which it is prohibited either by the Federal constitution or by the State constitution.—*Dorman v. The State,* 34 Ala.

It is said that this second section of the law of 1870 violates the constitution, because the pardoning power and the right to relieve from penalties are vested in the executive department of the government ; and the case of *Haley et al. v. Clark* (26 Ala. 439) is relied on to support this argument. It can not escape the attention of the court, that under our old constitution the right of the executive to remit fines and forfeitures was as to such forfeitures as were connected with the criminal law, and has no reference to forfeitures which may be incurred by failure to perform a duty, not amounting to a crime. This is the view of the court in the case of *Haley v. Clark.* But the present constitution is very different in the extent of the power given to the executive. The old constitution (Art. IV, § 11) gives the executive the power, except in cases of treason and impeachment, to grant reprieves and pardons,

and to remit fines and forfeitures generally. The present constitution of the State on this subject is as follows: " He shall have power, after conviction, to grant reprieves, commutations, and pardons for all offenses, (except treason and cases of impeachment,") &c. The power of relieving from forfeitures is not vested in the executive at all by the present constitution. In *Haley v. Clark*, the strong reason given why the legislature could not, either directly or indirectly, remit a fine, was that the power to remit being expressly given to the executive, the legislature was excluded, on the maxim, *expressio unius est exclusio alterius*. Under the present constitution, the power of pardon, reprieves, and commutations is confined expressly to cases " after conviction," and to offenses. The right to remit or relieve from a forfeiture is not given at all to the executive. The legislature, being the organ of the people to do whatever they could do if assembled in one body, except so far as restrained or prohibited by the State and Federal constitutions, therefore had the right to release a forfeiture.

2. But it is said again, that the tax having been assessed and levied for the counties, the right to collect the same was vested in the counties, and the legislature could not take away this vested right. This position is wholly untenable. The counties are parts of the municipal government of the State. The counties are, in other words, a part of the frame-work of the government of the State—a part of the State organization, and they are at all times subject to the control of the general assembly. Any laws made in reference to the counties, or cities, and, indeed, in reference to any public corporation, or *quasi* corporation of municipal character, are always subject to the general assembly, to be amended, modified, repealed, or abolished. The laws for the benefit of counties, cities, towns, and the like, never can create a contract beyond the control of the general assembly.—See *Mayor of Mobile v. Dargan*, opinion by Mr. Justice PETERS, 45 Ala. 310.

3. The right of the legislature to repeal the laws has never been questioned. The real effect of the section of

the law under consideration, is to repeal, or to amend so as to relieve the railroads from the payment of a special tax; and this repeal, independent of the express language of the act, relieves from the forfeiture or penalty. The repeal of a law imposing a penalty or forfeiture, destroys the right to enforce forfeitures or penalties under it, unless the right to enforce the same is expressly reserved in the repealing law.—See *Pope v. Lewis*, 4 Ala. 487.

4. There is nothing in the constitution of 1867 in reference to taxation which prevented the legislature from passing the act of the 9th of February, 1870.

5. It is said that the law of the 9th of February, 1870, is unconstitutional, because it amends a previous law without setting it forth in the amendatory law. This is not so. The section of the act to be amended is fully set forth in the amendatory law.

6. It is again said that the second section is unconstitutional, because it amends without setting forth the act to be amended. But there is nothing in this objection, because of the reason given above. And as a further answer, we cite the following authority: *Falconer v. Robinson*, 46 Ala. 340.

7. It is again said that the second section of the act of the 9th of February, 1870, is unconstitutional, because of alleged violation of the 4th subdivision of the 13th Article of the constitution. There is no discrimination between the property of corporations and individuals in the second section of the act of February 9, 1870. This clause of the constitution has no reference to any thing except a State tax. The right of the counties to tax is permissive, and may be withheld or controlled as the legislature may direct; or repealed, whenever the legislative will may so direct.

8. There can be no doubt of the power of a chancellor to grant the relief asked in this bill. The cloud thrown on the title of the complainant by the illegal sale, is sufficient to give the court jurisdiction, and to declare that the deed made by the tax collector shall be canceled. No other court could exercise the power of ordering the deed

Mobile and Girard R. R. Co. v. Peebles.

to be canceled, and of removing the cloud cast on the title of complainant.

STONE & CLOPTON, *contra.*—We insist that the second section of the act is unconstitutional, for the following reasons:

1. It is in violation of the second section of the fourth article of the constitution. The title of the act is, "An act to amend an act entitled, An act to establish revenue laws for the State of Alabama." This title contains but one subject, which is clearly expressed; that is, the amendment of the revenue laws. The act contains two distinct subjects. The first section is an amendment to the revenue law, and the third and fourth sections are sufficiently germane to constitute, with the first section, but one subject; but the second subject is not an amendment to the revenue law, but an entirely separate and distinct subject—the release of the railroad companies from the county tax for 1869.

2. But, if the second section is an amendment to the revenue law, then it is obnoxious to that provision of the second section of Article IV of the constitution, which provides that no law shall be revised or amended unless the new act contain the entire act revised, the section or sections amended.

3. The section violates the 9th Article, section 1, and the 4th section of the 13th Article of the constitution.

The 1st section of the 9th Article was intended to be, and is, a limitation upon the otherwise unlimited power of the legislature over the matter of taxation. It is based upon the equitable principle that, as all enjoy the protection of the government, all shall share equally its burdens. This rule of the constitution received a virtual and true construction in the case of *Mayor, &c., of Mobile v. Dargan, Ex'r,* 45 Ala. 310, in the following language: "Most clearly, all taxes are intended to be as nearly equal as possible. If they are local, and for community or local purposes, the whole community is supposed to be interested in their appropriation, and for this reason all are required to contribute to supply them. A tax levied for national

purposes is levied upon the whole people of the nation; a tax levied for a State falls on all its people; and, in like manner, a tax levied for a county is paid by the whole people of the county. So it must be with a tax levied on the people of a city or town, in order to make it just and equal. Such levies may include everything that may be called property, everything that can be owned. Such taxes, to make them just, must be in proportion to the value of the property upon which the burden is imposed, and they must be levied upon all, and not a few only. This is said to be an inherent principle of all taxation. It is the limit that use affixes to the word."

These principles, so eminently just and correct, in effect decide that, under the limitation of the 1st section of the 9th Article of the constitution, as well as by the inherent principle of taxation, the rate of taxation must be equal, and taxes must be levied upon all property and persons. The same principles have been also well settled in the construction of similar limitations in the constitutions of other States.—*Crow v. Missouri*, 14 Mo. 237; *McCreary v. People*, 34 Cal. 432; *Pike v. The State*, 5 Ark. 204; *Hunsacker v. Wright*, 30 Ill. 146; *Knowlton v. Supervisors*, 9 Wis. 410; *Zanesville v. Auditor of Muskingum*, 5 Ohio, 589; *Weeks v. Milwaukie*, 10 Wis. 258. The same principles and rule of construction have been held and sustained by the supreme court of the United States.—*Gilman v. Sheboygan*, 2 Black, 510; *Society for Savings v. Coite*, 6 Wall. 602.

And, as if apprehensive of the power and influence of large moneyed corporations upon legislation, the framers of the constitution provided further, that the property of corporations, except those for educational and charitable purposes, shall forever be subject to taxation the same as property of individuals.—§ 4, Art. XIII of Const.

Thus, the same rule of equal and proportional taxation is maintained and guarded as to the property of individuals and corporations.

From the foregoing principles and decisions, it follows, that an act of the general assembly taxing the property owned by citizens, and not taxing the same kind of prop-

erty owned by corporations, which are not for educational or charitable purposes, would be a departure from, and in violation of, the constitution. Hence, we can very properly contend that the entire act is void and unconstitutional, inasmuch as it provides that, after its passage, the property of railroad companies, with a small exception, shall be taxed for State purposes only; and, being an amendment of the general revenue law, the original provisions of the law are still in force, and counties still have the right to tax the property of railroad companies for county purposes.

The language of the constitution is, " *all taxes* levied on property *in this State*," &c. This is a limitation upon the assessment of taxes for county purposes, as well as for State purposes. It extends to all taxes in this State. As counties can levy taxes only by authority of the State legislature, it is the same as if levied by the State.—*Gilman v. Sheboygan*, 2 Black, 510; *Mayor, &c., of Mobile v. Dargan, Ex'r, supra; Hunsacker v. Wright*, 30 Ill. 146; *Zanesville v. Muskingum County*, 5 Ohio, 589.

As, then, the legislature can not, by a positive act, constitutionally authorize a county to levy a tax upon the property of individuals, and exempt the property of railroad companies, so it can not release railroad companies from a county tax levied alike upon the property of both under a constitutional act; for this is doing indirectly what the constitution forbids to be done directly. Yet this is what is attempted to be done by the second section of the act under consideration. If constitutional prohibitions can be thus evaded, they are powerless, and afford no protection to the citizens.

4. This second section is unconstitutional, because it deprives the county of a vested right. It is conceded that the power to tax is not a vested right, and, being given by law, may be taken away by law. But it is a very different question from the mere power to tax, when, by virtue of a granted power to tax, that power has been exercised by the county, a tax levied, assessed, and the day of its payment expired, and penalties incurred by reason of non-

payment. It becomes then a debt due to and vested in the county, and is the property of the county. The current expenses of the county, repairing its public buildings, erecting bridges, and keeping them in order, and for all other county purposes, have probably been incurred upon the faith of this tax; tax-assessor's and collector's commissions have accrued, and this kind of legislation either takes away from these officers these commissions, to which they have a vested right, or leaves the county liable, and deprives it of the means to pay. Has the legislature the power to take the courthouse of a county and give it to some individuals? If this tax had been paid, could the legislature have taken the money and given it to individuals? A county is a corporation, and the people are the corporators; it is authorized to hold property for its corporate purposes, and can sue and be sued. When its corporate existence ceases, then its property may go to the State; but so long as its corporate existence continues, then the State can not take away its property. Yet, by this second section, the legislature has taken away from the county the county taxes levied and assessed upon the property of railroad companies, and penalties incurred for the year 1869, and given it to the railroad companies under the disguise of a release. Thus, this case strongly illustrates the wisdom of that provision of the constitution which declares that the property of corporations shall be forever subject to taxation the same as the property of individuals.

5. This section, and, indeed, the entire act, is class legislation, which is opposed to the genius and spirit of our institutions, and the theory of the government, and the principles of our constitution.

All the prerequisites of the law in making the sale were complied with. If not, the burden is upon the complainant to prove the contrary.—Pamph. Acts, 1868, § 87, p. 324.

If there be personal property, it does not avoid this sale. But, if it did, the law never contemplated such personal property as a train of cars running through the county on

the complainant's track, but personal property located in the county. That the rolling-stock of a railway is a fixture, see Hill on the Law of Fixtures, § 61, p. 46.

The recitals of the decree waive all questions as to the validity of the sale, and simply require the complainant to do equity.

B. F. SAFFOLD, J.—The appellants filed the bill to remove a cloud from their title to certain property, and to cancel a deed obtained by the appellee, Peebles, under a sale of the property made by the tax-collector for the payment of taxes alleged to be due upon it.

The complainants aver that under the revenue law of 1868 they were liable to pay a stated amount of State and county taxes on their property in Bullock county for the year 1869, and on account of their default in paying ten per cent. damages on the amount, and certain costs and fees in addition, had accrued against them; that the general assembly, by an act approved February 9, 1870, remitted the tax due to the county, and all the penalties incurred, on conditions which they had fully complied with. But, notwithstanding this compliance, and against the protest of the complainants, both before and at the time of the sale, the tax-collector had sold the property for the payment of the tax and the penalties so released, and the defendant Peebles had become the purchaser, and had received a conveyance of the same from the proper officers. Peebles had notice of the matters alleged, and purchased not for himself, but for the county of Bullock. The purchase-money has not been paid, but the commissioners' court ordered the county treasurer to give a receipt to the tax-collector for the amount.

The chancellor held the act of February 9, 1870, amendatory of the revenue law of 1868, to be unconstitutional, and denied the relief asked.

It is claimed that this act violates the State constitution by encroaching upon the pardoning power vested in the executive department, (Art. 5, § 11); by withdrawing the property of a railroad corporation from taxation, (Art. 13,

§ 4); by amending an act without containing the act or section so revised, (Art. 4, § 2); and by depriving the county of the right to collect the tax which it had already assessed.

No elaborate argument is needed to dispose of these propositions. The power of the governor to reprieve, commute and pardon is confined to offenses for which there may be conviction and punishment. The non-payment of taxes is not made such an offense by any law of the State. The money penalty for the default is only an increased taxation.

The property of the corporation is not exempted from taxation. The State has only exercised its admitted power of selection and regulation of the subjects and mode of taxation, in a way peculiarly wise and just. The road bed and rolling stock are withdrawn from taxation for the use of the counties, because one is a highway, and the other can not be said to be property situated or belonging in any county. But both are taxed for the use of the State. The tax levied on these by the counties for 1869 is remitted.

A vested right which it is not competent for the legislature to take away is one springing from contract, or from the principles of the common law. The general expenditures of the county are incurred in the administration of the State government, and to meet these the State makes provision in its general revenue laws. The beneficial interest of a county in a tax collected for its use under this general law is nothing more than its share of a public fund apportioned by the State with reference to wealth and population. There is no element of a contract about it. The remission of the county tax did not impair the obligation of any contract.

The only amendment of the revenue act of 1868 made is the revision of its twenty-fourth section, which is set out. The revising law having changed the former one, its second section merely gives the change a retroactive effect.

2. The jurisdiction of chancery is sustained by reason and cogent authorities. The company remained in posses-

sion of its property, the purchaser making no attempt to assert his rights. In two years, the right of redemption might be lost. The invalidity of the sale was not apparent from the conveyance, and the proofs of it might be lost by time. In the meanwhile, a cloud was cast over the title of the complainants injurious to them, and significant of trouble in the future.—*Smith v. Pearson*, 24 Ala. 355; *Hamilton v. Cummings*, 1 Johns. Ch. R. 520 : *Elliot v. Piersol*, 6 Peters, 95.

The decree is reversed ; and a decree will be entered in this court, in accordance with the prayer of the bill.