155 So. 612

## UNION BANK & TRUST CO. v. BLAN,
### State Treasurer.
### 3 Div. 99.

Supreme Court of Alabama.
April 26, 1934.

Rehearing Denied June 28, 1934.

John S. Coleman and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for appellee.

KNIGHT, Justice.

The appellant, having paid under protest the excise tax levied and assessed against it on its net income for the tax year 1932, running from October 1, 1931, to September 30, 1932, for the privilege of engaging in the business of banking, and of conducting a financial business employing moneyed capital coming into competition with the business of national banks, in the state of Alabama, sued the appellee to recover back the money so paid.

This excise tax was levied and assessed against appellant upon its net income for the tax year 1932 by the state tax commission pursuant to the provisions of an act of the Legislature of Alabama approved October 22, 1932, and which carried a provision making the act effective upon its approval by the Governor. General Acts, Extra Session 1932, p. 112 (section 9).

Section 6 of the act in question reads: "Ad valorem exemptions and credits. All moneyed capital employed in the business the privilege of engaging in which is hereby taxed, and the shares of all financial institutions, as in this Act defined, shall be exempted from assessment and payment of ad valorem taxes, including those for the current tax year 1931–1932, except the moneyed capital and shares of any business hereby taxed which fails to make and file the returns required by this Act and to pay the tax levied by this Act as and when in this Act provided. The real estate owned by every such financial institution shall not be exempted. If any other tax whether on property (other than ad valorem taxes on real estate), income, business or any element thereof, except license taxes not in excess of those heretofore legally levied and in effect, be levied by this State or by any political subdivision of this State on any financial institution as in this Act defined, the amount of such other tax due by such institution shall be credited on account of the tax payable pursuant to the provisions of this Act."

It is insisted by appellant that, if the act providing for the levy and assessment of the excise tax was ineffectual in exempting it from the payment of the ad valorem tax on its shares of capital stock for the tax year 1931–1932, then, and in that event, it was not liable for the payment of the excise tax for the tax year 1932, as it was not the legislative mind or purpose to impose both taxes during said year upon appellant.

This court in the case of Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552, 553, held that the state could levy and assess an ad valorem tax against the shares of the capital stock of state banks, notwithstanding the fact that national banks were allowed to escape the payment of such tax. This court, in that case, recognized the fact that there was "no semblance of justice in taxing the shares of State banks and excluding those of National banks." The remedy for the injustice, it was pointed out, lay with the lawmaking power of the state and federal governments. The decision in the Phelps Case, supra, was announced by this court on May 19, 1932, and during the Extra Session of the Legislature of 1932 a bill, which afterwards became the act now under consideration, was introduced.

It may be conceded that the purpose of the act under consideration was to remedy the situation presented in the Phelps Case, supra, and to impose a tax alike upon national and state banking institutions, to the end that each class should be required to bear its just burden in supplying revenue to defray the expenses of operating the state government. It was recognized that national banks, while enjoying the equal protection of the laws of the state, should bear their fair and just burden in meeting and defraying the cost of maintaining the state government.

The idea of equality of burden upon both classes was the dominant thought of the Legislature in the adoption of the Excise Tax Law of 1932.

■■■ We say this because a cardinal rule of statutory construction is to arrive at the legislative intent, and, to do so, we may look to the object of, the enactment against which it was intended to provide, the defect to be supplied, and the mischief sought to be prevented, averted, or ameliorated. Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343; Cocciola v. Wood-Dickerson Supply Co., 136 Ala. 532, 33 So. 856; Thompson v. State, 20 Ala. 54; Huffman v. State, 29 Ala. 40–43.

The act now to be construed, in its original form, was introduced in the lower house of the Legislature in August, 1932. Before this original bill was ordered to its third reading in the House, a substitute therefor was offered and adopted, and the bill, as so amended, was passed by the House on October 6, 1932, and thereafter passed by the Senate on October 18, 1932, with amendment, and this Senate amendment was concurred in by the House on the same day, and was approved by the Governor on October 22, 1932.

The act, in section 8, provides: "If any clause, sentence, section, division or portion of this Act shall be held invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, clause, division or portion of this Act which is not itself unconstitutional."

Section 9 of the act provides: "This Act shall become effective immediately upon its approval by the Governor."

As heretofore pointed out, the major purpose of the act was to levy an excise tax for the privilege of engaging in the business of banking in the state of Alabama, and of conducting a financial business employing moneyed capital coming into competition with the business of national banks, so that national banks as well as state banks would be amenable to the law. The attempted exemption of state banks from the payment of an ad valorem tax on the shares of their capital stock for the tax year 1931–1932 was but an incident, and not the inducing or controlling purpose of the act.

We have held in the case of Union Bank & Trust Co. v. Phelps, 153 So. 644,[1] on submission at the same time with this case, that the attempt to make the exemption in favor of state banks for the tax year 1931–1932 of ad valorem taxes was abortive, for the reason that the tax had been levied, and assessed, and was due and payable to the state before the approval of the act in question; and that the Legislature was inhibited by section 100 of the Constitution from remitting this tax.

■■ The sole question, as we see it, to be now determined is, Was the inclusion of the exemption from ad valorem taxes for the tax year 1931–1932 the inducement which actuated the Legislature in adopting the act in question? If it was, then, of course, the entire act would fall, as we have held that the Legislature was without power to relieve the state banks from the payment of 1931–1932 ad valorem taxes, inasmuch as these taxes, at the time the act was adopted, had become liabilities to the state.

We do not think that the act must fail in the accomplishment of its major purpose, because of the abortive effort on the part of the Legislature to grant an exemption, which, at best, was but an incident, a subsidiary matter, and was separable from the main provisions of the act.

In the case of State v. Duluth Gas & Water Co., 76 Minn. 96, 78 N. W. 1032, 1034, 57 L. R. A. 63, the Supreme Court of Minnesota, in considering a statute providing for the listing and assessing for taxation of franchises and other intangible property of certain corporations, held that the provisions of the section deducting the total amount of indebtedness of a corporation from the value of its stock was unconstitutional and void, but that the same did not invalidate the remaining part of the act. The court said in part: "Again, while it cannot be denied that the legislature intended the provision for deducting the indebtedness from the value of the capital stock to be a part of the system of listing and assessing the property of these corporations, * * * yet this provision is easily separable from the other provisions of the section. What would remain would constitute a complete system of taxation, fully

---

[1] 228 Ala. 236.

capable of being executed in accordance with what we think was the apparent legislative intent. The fact that this void provision is in the same section with other provisions is not important, for the distribution into sections is purely arbitrary. The test is, rather, whether the provisions are so essentially and inseparably connected and interdependent that the one may not operate without the other, or that it is impossible to suppose that the legislature would have passed the one without the other. There is no such essential and inseparable connection or interdependency in this case. The other provisions will operate, and can be executed, with this invalid provision stricken out. Neither is there anything to justify a court in holding that the legislature would not have enacted the statute with this obnoxious provision omitted. The evident intention was to reach for taxation the franchises and other intangible property of these corporations and associations as effectually and completely as possible."

To the same effect is the holding in the case of Northwestern Mutual Life Ins. Co. v. Lewis & Clarke County, 28 Mont. 484, 72 P. 982, 98 Am. St. Rep. 572; People v. McCreery, 34 Cal. 432; People v. Whyler, 41 Cal. 351; City of Dubuque v. C., D. & M. R. Co., 47 Iowa, 216.

In 6 Ruling Case Law, p. 125, § 123, the rule on the subject under consideration is thus stated by the author: "One of the tests used to determine whether a statute is or is not severable so that a portion may be rejected is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional; but where the valid and the invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid."

"Exceptions may, however, be stricken out when doing so does not defeat the general intent of the legislature; so where a statute purporting to impose a tax on insurance corporations based on the excess of premiums received over losses and expenses incurred, and exempting the corporation from all other taxation, although it is void as to the exemption, has been decided to be valid and enforceable in other respects." 6 R. C. L. § 127.

Our holding in the case of Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552, was to the same effect.

In the case of State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974, 977, the court held in respect to a statute, in part valid and in part invalid: "If the act can be given operation and effect without such void provision, the valid portions of it will be allowed to stand, unless the court is unable to say or to know that the Legislature would have passed the act without the void provision; but the court is relieved of any doubt as to this matter by section 18 of the act in question, which expressly provides that, if any provision of the act shall be held void, it shall not affect any. other section or provision of the act. Harper v. State, 109 Ala. 32, 19 So. 857; State v. Davis, 130 Ala. 150, 30 So. 344, 89 Am. St. Rep. 23; Shehane v. Bailey, 110 Ala. 308, 20 So. 359."

In State v. Carter, supra, it is held that a statute may be valid in part and invalid in part, and the invalid part will be disregarded, where the two parts are not so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other.

And in State ex rel. Crumpton v. Montgomery et al., Excise Commissioners, 177 Ala. 212, 59 So. 294, it is held that an enactment may be valid in part and invalid in part, and the general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken. Powell v. State, 69 Ala. 10; Doe ex dem. Davis v. Minge, 56 Ala. 121; Wilkinson v. Stiles, 200 Ala. 279, 76 So. 45.

We conclude that the invalid exemption from ad valorem taxes on shares of capital stock of state banks for the tax year 1931–1932 was not the legislative inducement to the enactment of the act of 1932, in question; that it was at most a mere incident; that it was separable from the rest of the act; and that the abortive effort to grant such an exemption in no wise served to render invalid the remainder of the act. Nor do we understand that counsel for appellant makes here such an insistence. The court has, of its own initiative, considered the question in an effort to find the legislative intent in adopting the act in question, and to ascertain if the striking of the abortive clause would render invalid the entire act.

It is apparent from the whole act, and made more apparent from section 9 of the same, that it was the legislative will to put the said excise tax into effect immediately

upon the approval of the act. To hold that it did not become operative for the tax year 1932, but was postponed to another tax year, would amount to judicial legislation, which we are not authorized to do. Courts have no right, under the guise of construction, to suspend or to postpone the operation of a statute which the Legislature, within constitutional limits, has declared shall go into immediate effect.

Nor does the act evidence any legislative purpose to permit the appellant bank to take credit against the excise tax levied and assessed against it for any amount paid as ad valorem tax, nor vice versa.

That the state could, within constitutional bounds, levy both an ad valorem tax on the shares of banks and an excise tax on their net incomes is not controverted.

We arrive at the conclusion that the appellant owed the state the excise tax paid by it under protest, and is not entitled to recover the same in this action, and that the lower court properly so held.

It follows, therefore, that the judgment appealed from is due to be, and is accordingly, affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, and BROWN, JJ., concur.

BOULDIN, Justice (dissenting).

A careful reading of the Act of October 22, 1932 (Acts 1932 [Ex. Sess.], pp. 107, 108) discloses that the act was drawn with a view to its passage and approval during the current tax year beginning October 1, 1931, and ending September 30, 1932.

The tax returns, covering net income for a full tax year, were required by section 2 to be filed within the first ten days of October, 1932.

The exemption from ad valorem taxes of 1931–1932 was with the same thought in mind, to remove that tax before it became due on October 1, 1932, and let the excise tax cover that tax year.

But the act was not passed and approved until October 22, 1932, with the result that section 100 of the Constitution intervenes to prevent cutting off the ad valorem tax for that period.

It is the manifest purpose of the act to make the taxes successive, not cumulative, the one to be in lieu of the other, not a doubling up of the two.

Carrying out this intent, it follows that, while the ad valorem tax on shares of state banks remained in force, the excise tax did not attach. The excise tax paid for the tax year 1931–1932 was therefore wrongfully collected, and plaintiff was entitled to recover same. State ex rel. Crumpton v. Montgomery et al., 177 Ala. 212, 241, 59 So. 294.

FOSTER, J., concurs.