163 So. 527

**STATE v. ALABAMA EDUCATIONAL
FOUNDATION.**

6 Div. 682.

Supreme Court of Alabama.

June 20, 1935.

Rehearing Denied Oct. 10, 1935.

12

A. A. Carmichael, Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

Lange, Simpson & Brantley, of Birmingham, for appellee.

FOSTER, Justice.

The question on this appeal relates to the constitutionality of an act· approved September 9, 1927, p. 564, by which "there is exempted from taxation * * * all property, real and personal, by whomsoever owned, and whether assessed or not, during the entire time, including the current tax-year, the net income, rents and returns from which are used, or are to be

14

used, exclusively for educational purposes in the State of Alabama, other than for schools owned or controlled by any religious sect or denomination."

The assessment is of certain property in Alabama whose income has been. so used, or is to be used for the benefit of such a school, since the beginning of the tax year 1926–27. The appeal relates to the taxes for 1928, 1929, 1930, 1931, and 1932 tax years, respectively. During all that time the income of the property was so used, or is to be used as indicated.

Appellee was relieved of the tax assessment by a ruling of the Attorney General in office when the act was passed, and by order of the State Tax Commission in 1928 and 1929, respectively. But the Attorney General insists that the act is in violation of sections 91, 100, 211, and 217 of the Constitution, and is void for uncertainty.

■ Section 91 is self-executing, and exempts lots in incorporated cities (and those outside such cities, within certain limitations) from taxation when they are used exclusively for religious worship, for schools, or for purposes purely charitable. Its meaning has been clearly defined to make exemption dependent upon the use and not the ownership of the property, and not use of the income from it. State v. Church of the Advent, 208 Ala. 632, 95 So. 3; Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659.

■ The general rule is that when the Constitution specifically creates exemptions from taxation, there is an implied prohibition against other legislative grants in that connection. State v. Elba Bank & Trust Co., 18 Ala. App. 253, 91 So. 719; State v. Guaranty Sav. Bldg. & Loan Ass'n, 225 Ala. 481, 144 So. 104, 86 A. L. R. 819; 2 Cooley on Taxation, §§ 659, 661, note 57; 61 Corpus Juris, 389; State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A. L. R. 421.

Also when the taxation requirements of the Constitution manifest a purpose to include all those who own property which is made taxable, or who are within its provisions. Authorities supra.

■ It is, however, well understood that unless restricted by express or implied provisions, the power to exempt is as much a legislative prerogative as the power to tax. In both respects the Constitution is restrictive in operation and not permissive.

2 Cooley on Taxation, § 659; 61 Corpus Juris, 384.

■ Section 91 is not in connection with any specific subject of taxation, to which it is an exception. It is not so expressed as to show a purpose to prohibit the Legislature from granting other exemptions to religious, educational, and charitable institutions. We do not think that such is its intent.

■ Section 211 provides that "all taxes levied on property in this state shall be assessed in exact proportion to the value of such property." This provision does not prevent a classification of property for taxation, nor show a purpose to prohibit an exercise of the inherent right to create exemptions. Mobile & G. R. R. Co. v. Peebles, 47 Ala. 317. Indeed such right is recognized to some extent, at least, in Crow v. Gen. Cable Corporation, 223 Ala. 611, 137 So. 657; though it cannot be permanently bargained away. Swann v. State, 77 Ala. 545.

■ In this connection, section 211 should be considered in the light of section 217. The latter requires equality of the tax rate, with a proviso that "this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes." Such institutions are therefore expressly exempted by sections 91 and 217, with nothing to indicate a prohibition from exemption under section 211.

The Attorney General argues that the proviso to section 217 only exempts from its operation property owned by such institutions. But its language is that it shall not apply to such institutions. If the entire net income of property is devoted to an institution, it is its sole beneficiary, regardless of where the legal title may be placed. As long as such income is in good faith so devoted, exemption from taxation is a direct benefit to it, and applies to it. We think that the exception in section 217 should be interpreted to embrace such a situation. But, as we have said, that section relates to the equality of rates. That means, literally, that conceding the obligation to pay taxes, the rate must be equal, regardless of ownership, except as to such institutions. We do not intend here to limit its interpretation to that effect. The right to exempt here in question is not wholly dependent upon that proviso, but it is persuasive to show that there is no purpose manifested in the Con-

stitution to restrict the inherent right of the Legislature to make such an exemption.

We think, therefore, that the Legislature is not prohibited from making a classification of such institution by those several constitutional provisions.

The act of 1927 creates a classification of property for exemption from such taxation, regardless of ownership, if its net income has been or is to be used exclusively for educational purposes in this state, other than for religious schools. Under other acts of the Alabama Legislature, property is taxable, although its income is devoted to educational purposes exclusively. Gen. Acts 1923, p. 153, § 2; Gen. Acts 1919, p. 283, § 2.

■ Whatever classification is authorized is also subject to subclassification within recognized rules. 1 Cooley on Taxation, page 711; 61 Corpus Juris 130, § 59.

■ Although educational institutions are subject to legislative exemptions from taxation, it is not necessary that the grant of exemption shall extend to all those which are devoted exclusively to "religious, educational, or charitable" purposes. Such legislative grant is to be construed in the light of the prerogative power to exempt those as to whom the right is not denied expressly or impliedly to the Legislature, with due regard to all of a class.

■ Construing the constitutional power to exempt embraced in section 217, in connection with the broad right otherwise to grant exemptions, when not restricted, it necessarily follows that the Legislature may classify for such exemptions certain institutions, which are either religious, educational, or charitable, provided the classification meets the requirements of the equal protection features of the State and Federal Constitutions (Const. U. S. Amend. 14, § 1). McLendon v. State, 179 Ala. 54, 60 So. 392, Ann. Cas. 1915C, 691; Aero Mayflower Transit Co. v. Ga. Public Service Comm., 295 U. S. 285, 55 S. Ct. 709 (5), 79 L. Ed. 1439.

■ "Conceding that the power to classify exists, the next question is what classifications are proper. The rules are easy to state but their application to particular facts is often attended with difficulty. The following are [some of] the governing rules: 1. A particular classification is proper where based on a reason and not purely arbitrary. There must be a reason for the classification as distinguished from mere accident, whim, caprice, or vindictiveness. 'Clear and hostile discrimination' cannot be made under the guise of classification. A discrimination is not arbitrary, of course, where based on sound reason of public policy. On the other hand, while there must be a reason for the classification, the reason need not be a good one, and it is immaterial that the statute is unjust. The test is not wisdom but good faith in the classification." 1 Cooley, supra, § 334.

■ There is no constitutional provision for the favor or disfavor of religious schools over those not so devoted. Religious institutions and such as are educational, though not religious, may be exempted from equality of rate by the express terms of section 217. But "no preference shall be given by law to any religious sect, society, denomination, or mode of worship." Section 3, Constitution. So that religious institutions cannot be classified for exemption according to creed.

■ But the question is: Must all educational institutions be exempt, if any are? May the Legislature place those which are religious in one class, and those which emphasize no religious creed in a different class for tax exemption? Is there any difference, for classification, to support an argument, whether or not the argument may be sound in the opinion of the court? It is not our province to determine the qualities of the argument, but it is that of the Legislature, although it must not be wholly illusory. Every presumption in its favor must be indulged.

The educational institutions of a religious sect are created by the adherents of that faith, so that the instructors may be free to emphasize its principles. It is not the province of government to aid in the promulgation, though certainly not the discouragement, of such religious principles. To exempt from taxation is akin to the principle of appropriating the amount of the tax; not its counterpart, but predicated upon similar considerations. 2 Cooley on Taxation, § 653.

■ The lots (defined by section 91) of all educational institutions used for such purpose, are exempt. So much is in effect appropriated to them all alike. But the Legislature says that no further such benefits shall be given sectarian schools because, we may assume, all the people of the state pay taxes, and are entitled to their

**16**

benefits, and are interested in all others paying their proportionate share. Therefore further tax benefits should not—the Legislature has said—extend to those educational schools which emphasize some religious belief.

Is it wholly irrational for the Legislature to say that it shall extend further tax benefits only to schools which do not emphasize a religious faith, but in which no religious belief or unbelief is a factor, and which are devoted wholly to secular education? On the other hand, would it be irrational or arbitrary if, in the judgment of the Legislature, this particular exemption had been extended to religious institutions alone, so as to exclude all privately endowed and privately controlled schools with no religious leaning? The circumstance of religious belief, not of any certain faith, may, we think, sometimes be a factor in including or excluding participation in legislative bounty without declaring such an exercise of power to be wholly illogical.

We think it is within the constitutional power of the Legislature, not prohibited by any of its features, but recognized in the proviso to section 217, to classify property for tax exemption as was done by the act of 1927, here in question.

 It is next insisted that the act is inoperative under section 100, Constitution, because it undertook to remit the taxes for the current year assessed as of October 1, 1926, ending September 30, 1927. The act was approved September 9, 1927. Section 100 prohibits the Legislature from remitting any obligation or liability held by the state or county. Tax upon property is not only a personal charge against the taxpayer (Union Bank & Trust Co. v. Phelps, 228 Ala. 236, 153 So. 644; Perry County v. Selma, M. & M. R. R. Co., 58 Ala. 546), but it must be paid by the one who owns the property at the beginning of the tax year, who is personally bound to pay it, whatever may occur as to its ownership thereafter or its physical status. Swann v. State, 77 Ala. 545; 61 C. J. 171, 172, § 126, note 65; People of New York v. Tax & A. Commissioners, 104 U. S. 466, 26 L. Ed. 632.

 After it becomes an obligation fixed by those incidents, it cannot be remitted. Ownership on October 1st is the circumstance which fixes a liability for the succeeding years' assessment, though it may not then be assessed.

In some of our cases it has been said that the liability accrued when payment of the tax became due. State v. Youngstown Mining Co., 219 Ala. 178, 121 So. 550, 552, quoted in the case of Union Bank & Trust Co. v. Phelps, supra. In the Youngstown Mining Company Case, the court was dealing with a tonnage tax, and held that it was due when the coal was mined. There was no liability for that tax until it was mined. It was further observed that Justice McKenna had said that a tax accrued "when it is due and payable." Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001–1008. While Justice McKenna did so assert, it was not, as we understand it, the opinion of a majority of the court. But they seem to have held, in line with our case of Swann v. State, 77 Ala. 545, that a liability for taxes is fixed when the duty to pay them becomes certain. That statement in the Youngstown Mining Company Case, supra, and quoted in the Phelps Case, supra, was unnecessary to a decision of either of them, and not exactly in conformity with the effect of the former holdings of this court.

 We think that section 100 applies whether the liability is due or not, if it is fixed. There is a personal liability for ad valorem taxes on property by its owner on October 1st, for the succeeding year, though the amount is not then ascertained, and the Legislature is powerless to relieve him of it by act effective after that date.

But that is not sufficient reason for striking down the act in its application to succeeding years.

This property was listed for taxation for that year, but on January 11, 1928, the State Tax Commission, on the advice of the Attorney General, relieved the taxpayer by virtue of the Act of September 9, 1927. We think to that extent the act was inoperative by virtue of section 100, Constitution. But that it is operative for the subsequent years.

Appellant also contends that the act is invalid because the exemption is controlled by a vague, changeable purpose or intent to use the income as there described, and that the property need not be owned by the institution, and therefore it may be disposed of before the income is so used and thereby its appropriation to such use be withdrawn; because no machinery is set up to determine the question of exemption; because the net income may be insignifi-

cant, after the allowance of exorbitant expense, so as virtually to create an exemption without any educational benefits as designed by the act.

There is no doubt but that the suggestions so made by the Attorney General are pertinent, and that a loose administration could defeat the purpose of the act. But we think it is clear that the right to such exemption is one which the taxpayer who owns the property must claim with each annual assessment of his property. The tax assessor and then the State Tax Commission are vested by law with authority to determine the right to the exemption, as they did in 1928 and 1929, and again in 1933 (from which last order this appeal was taken), subject to judicial review as also provided by law. Gen. Acts 1923, p. 185, § 67; reviewable by appeal, same act, page 183, section 60.

[19] We think that a separate inquiry is necessary each year by the Commission to determine the right to the exemption. Swann v. State, supra. That will depend upon whether the income to be derived during that year was on October 1, of that tax year, irrevocably devoted to that use, so that it could not be applied to any other purpose. That does not mean that the income for that year must be expended that year, but definitely devoted to that cause to be expended then or thereafter by or for the institution, and shall be and become either its separate property when it accrues, on some methodical and fixed basis, or is irrevocably held for its use. That such is the fair meaning of the words in the act "are used or are to be used," is clear to us.

Any sale or disposition of the corpus of the property during the tax year would not affect the situation, because the exemption would only be allowed when the income for that year has been appropriated for such use in a way and manner which would be operative regardless of the ownership of the property which produces it.

We think the tax assessor and State Tax Commission, and court on review, would have ample power to ascertain if such appropriation of the income is merely colorable or accompanied with a purpose to obtain an exemption without corresponding school benefits, as contemplated, nor not wholly devoted to educational purposes so provided. If it is apparent that the net income is insignificant compared to the value of the property, or any of it is used for other purposes, fraud would be a natural inference, and the property would not be exempt. None of such situations are here alleged to exist. But the suggestions are properly made for the purpose of determining whether the act is workable under all circumstances, and void for uncertainty, or the opportunity for fraud. But, as we view it, the state and county authorities have ample power to protect themselves against abuse or fraud and to enforce the act according to its manifest purpose. This interpretation of the act has, by amendment, been written into it. Gen. Acts 1932, Ex. Sess., p. 240.

The agreed facts show that appellee, which owns the property in question, is a corporation organized under Alabama laws, and is to be operated exclusively for educational purposes without profit to any stockholder or individual; that it has acquired two school sites with the income, and the balance is being accumulated and held in bank for the erection and operation of the first school unit; and that all of its income has been or will be used exclusively as the statute provides.

We see nothing in this which is violative of any contention which we have discussed.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and BROWN, JJ., concur.

KNIGHT, J., not sitting.