175 So. 690

## In re OPINIONS OF THE JUSTICES.
### No. 43.

Supreme Court of Alabama.
June 17, 1937.

Response to questions propounded by Governor.

Questions propounded by the Governor to the Justices of the Supreme Court, under Code, 1923, §§ 10290, 10291.

Questions answered.

January 15, 1937.

To the Honorable Chief Justice and Associate justices of the Supreme Court of Alabama.

Gentlemen:

As Governor of Alabama, I hereby respectfully request, in writing, the opinion of the Justices of the Supreme Court on the following important constitutional question, to-wit:

Does section 100 of the Constitution of Alabama prevent the exemption of homesteads in Alabama from state ad valorem taxes due October 1, 1937, and delinquent January 1, 1938, as provided by an act of the Legislature approved February 20, 1937, entitled "An Act to define homesteads as herein used and to exempt such homesteads from such State ad valorem taxation"?

Copy of said act is hereto attached.

In connection with this request, your attention is respectfully called to an act approved March 12, 1936, found in General and Local Acts of Alabama, Extra Session 1936, page 4, entitled "An Act to amend Section 31 of an Act entitled, 'An Act to provide for the general revenue of the State of Alabama,'" providing for the separate assessment of homesteads; and also an act approved February 23, 1937, entitled, "An Act to set up in the State Treasury a Property Tax Relief Fund and to provide for its distribution," a copy of which is hereto attached.

This request is made under the authority of sections 10290–10291 of the Code of Alabama, as amended.

Respectfully submitted,

Bibb Graves, Governor.

The following are the acts referred to in the foregoing communication from the Governor:

AN ACT

To define homesteads as herein used and to exempt such homesteads from such State ad valorem taxation.

*Be it Enacted by the Legislature of Alabama:*

Section 1. The word "homestead" as herein used is the "homestead" as now defined by the Constitution and Laws of the State of Alabama.

Section 2. Homesteads, as herein defined, are hereby exempted from all State ad valorem taxes beginning October 1, 1937.

Section 3. In no case shall the exemption herein made apply to more than one person, head of the family, nor shall said exemption exceed Two Thousand Dollars ($2,000.00) in assessed value, nor one hundred sixty (160) acres in area.

Approved February 20, 1937.

AN ACT

To set up in the State Treasury a Property Tax Relief Fund and to provide for its distribution.

*Be it Enacted by the Legislature of Alabama:*

Section 1. That there is hereby set up in the State Treasury a Property Tax Relief Fund to be used to reimburse the State General Fund, the State Soldiers' Relief Fund and the Public School Fund by such amounts as are lost to such funds by reason of exemption of homesteads, in whole or in part, from the payment of the State levy of twenty-five cents (25c) on each One Hundred Dollars ($100.00) of taxable property for the State General Fund; ten cents (10c) on each One Hundred Dollars ($100.00) of taxable property for the State Soldiers' Relief Fund and thirty cents (30c) on each One Hundred Dollars ($100.00) of taxable property for the Public School Fund.

Section 2. That the surplus over and above Seven Hundred and Fifty Thousand Dollars ($750,000.00) in the State General Fund, after all State appropriations now or hereafter payable from the State General Fund are paid in full on September 30th of each fiscal year beginning September 30, 1937, shall be transferred from the State General Fund into and become a part of the Property Tax Relief Fund.

Section 3. Any surplus in the Special Educational Trust Fund on September 30th of each fiscal year, beginning September 30, 1937, remaining after all appropriations now or hereafter payable from the Special Educational Trust Fund have been paid in full, shall be transferred into and become a part of the Property Tax Relief Fund.

Section 4. The State Comptroller, with the approval of the Governor, is hereby directed to draw warrants payable out of the Property Tax Relief Fund payable to the

State General Fund, the State Soldiers' Relief Fund and the Public School Fund in amounts sufficient to reimburse each of said Funds for revenues lost by the exemption of homesteads, in whole or in part, of State ad valorem taxation.

Section 5. The State Comptroller shall ascertain the commissions due the Tax Assessors and Tax Collectors of the several counties lost by the exemption of homesteads as otherwise provided, and shall, with the approval of the Governor, draw his warrant payable out of the Property Tax Relief Fund and payable to each Tax Assessor and Tax Collector in each county in the State of Alabama the amount of his commission so ascertained. Provided, however, that in counties in which the Tax Assessors and Tax Collectors are on a salary basis, the State Comptroller shall ascertain the commissions due the Tax Assessors and Tax Collectors of such counties and lost by the exemption of homesteads as otherwise provided and shall, with the approval of the Governor, draw his warrant payable out of the Property Tax Relief Fund and payable to such county the amount of the commission so ascertained as earned by the Tax Assessor and Tax Collector of such county and due such county for its general fund. ·

Section 6. Should any surplus remain in the Property Tax Relief Fund after the charges hereinabove set out have been paid off or discharged in accordance with the provisions of this Act, then the Governor is directed, by proclamation, to reduce pro rata the State levy on all State ad valorem tax assessments, and the Tax Collectors and Tax Assessors are authorized and required to·enter such reduction pro rata in the assessment and collection of all. State ad valorem taxes.

Section 7. All laws and parts of laws in conflict with the provisions of this Act be and the same are hereby expressly repealed.

Approved February 23, 1937.

Hon. Bibb Graves,
Governor of Alabama,
Montgomery, Alabama.

Dear Sir:

Replying to your inquiry of June 15, 1937, we respectfully submit the following:

■ The act of February 20, 1937, was by its terms and contents, and by the companion act, approved February 23, 1937, effective from the date of its approval. The act in question contained the provision,

"Homesteads, as herein defined, are hereby exempted from all State ad valorem taxes beginning October 1, 1937." In common parlance, the terms thus employed mean that the exemption declared was to apply to the taxes of the current tax year, 1936–37, and the taxes to become payable on and after October ·1, 1937. Such is the legislative intent.

■ The question being dealt with, and the state revenue system, and its administration affected by the act, are to be taken in pari materia. When so considered, the immediate operation and effect of the act are shown.

The companion act of February 23, 1937, (Mooneyham, S. 16–No. 127), provided for the depletion of the several funds by reason of the immediate effect of the Homestead Exemption Act. It was declared that there was hereby set up in the State Treasury a "Property Tax Relief Fund" to reimburse (1) the "State General Fund," (2) the "State Soldiers' Relief Fund" and (3) the "Public School Fund" by such "amounts as are lost to such funds by reason of the exemption of homesteads, in whole or in part from the payment of the state levy"; that the sums provided "are paid in full on September 30 of each year, beginning September 30, 1937." It is further provided in section 6 of this act, as follows: "Section 6. Should any surplus remain in the Property Tax Relief Fund after the charges hereinabove set out have been paid off or discharged in accordance with the provisions of this Act, then the Governor is directed, by proclamation, to reduce pro rata the State levy on all State ad valorem tax assessments, and the Tax Collectors and Tax Assessors are authorized and required to enter such reduction pro rata in the assessment and collection of all State ad valorem taxes."

Thus the exemption of the homestead is declared, and the available funds appropriated to meet the deficit in the several "earmarked" funds and the fees of officers. The act provides that "the Tax Collectors and Tax Assessors are authorized and required to enter such reduction pro rata in the assessment and collection of all State ad valorem taxes." Section 6, supra.

It is further provided that $750,000 shall be transferred from the State General Fund into and become a part of the Property Tax Relief Fund, and section 4 states that, "The State Comptroller, with the approval of the Governor, is hereby directed to draw war-

rants payable out of the Property Tax Relief Fund payable to the State General Fund, the State Soldiers' Relief Fund and the Public School Fund in amounts sufficient to reimburse each of said Funds for revenues lost by the exemption of homesteads, in whole or in part, of State ad valorem taxation."

■ Does the construction of the immediate effect of this act, when applied to ad valorem taxes for the year 1936–37, as an exemption of the homestead, collide with our decisions? Pullman Car & Mfg. Corporation v. Hamilton, 229 Ala. 184, 155 So. 616; Union Bank & Trust Co. v. Phelps, 228 Ala. 236, 153 So. 644; Union Bank & Trust Co. v. Blan, 229 Ala. 180, 155 So. 612; State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527.

To an understanding of the legislative intent in the matter, it is necessary to consider the two acts, as we have above indicated, which were approved, respectively, February 20, 1937, and February 23, 1937. If the Legislature and the Governor by approval of the act of February 20, 1937, had not intended that it should become of "immediate" effect, as to the tax year 1936–37, provision would not have been made to immediately set up in the state treasury a property tax relief fund, providing for the reimbursement of the several "earmarked" funds indicated in the act of February 23, 1937, to be affected by the withdrawal from and the exempting of the homestead as an object of taxation.

■ Be it understood that the Legislature is free to create classes upon whom the taxing power may be levied, and the only uniformity requisite is that subjects of the same class are made to bear equally and uniformly the burdens imposed. Frazier v. State Tax Commission (Ala.Sup.) 175 So. 402;[1] Western Union Telegraph Co. v. State Board, 80 Ala. 273, 280, 60 Am.Rep. 99; Republic I. & S. Co. v. State, 204 Ala. 469, 86 So. 65; Woco Pep Co. v. City of Montgomery, 213 Ala. 452, 105 So. 214; State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527; Singer, etc., Co. v. Brickell, 233 U.S. 304, 34 S.Ct. 493, 58 L.Ed. 974; American Sugar Ref. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102; Carmichael et al. v. Southern Coal & Coke Co., 57 S.Ct. 674, 81 L.Ed. ——.

The court declared of the right of exemptions from taxation in Pullman Car & Mfg.

Corporation v. Hamilton, 229 Ala. 184, 155 So. 616, 619, that "the extent of the exercise of the power of taxation within constitutional limits being purely legislative, the power to exempt any class of property from taxation—an exemption not forbidden by the Constitution as being purely arbitrary, capricious and without semblance of reason—is likewise a matter for the exercise of legislative policy and judgment, with which the courts are not concerned."

In the case of the Union Bank & Trust Co. v. Phelps, 228 Ala. 236, 153 So. 644, the holding was that the ad valorem taxes on shares of bank capital stock for the tax year could not be lessened or diminished by the amount of excise tax levied and assessed by the State Tax Commission. This was sought to be done by the act of October 22, 1932 (Gen.Acts 1932, Ex.Sess. p. 112, § 6) releasing ad valorem taxes on shares of bank capital stock which became due October 1, 1930, and this was held to be within the inhibition of section 100 of the Constitution. It was observed of this decision in Union Bank & Trust Co. v. Blan, 229 Ala. 180, 155 So. 612, 614, that "the attempt to make the exemption in favor of state banks for the tax year 1931–1932 of ad valorem taxes was abortive, for the reason that the tax had been levied, and assessed, and was due and payable to the state before the approval of the act in question; and that the Legislature was inhibited by section 100 of the Constitution from remitting this tax."

In the Blan Case, supra, was the declaration and holding as to legislative intent and how the remission from taxes affected the other parts of the act as passed October 22, 1932; after that tax had accrued for the tax year 1931–32 and thereafter, sought to be dealt with? It was observed that the tax year having ended on September 30, 1932, it may not thereafter be affected by the act of October 22, 1932, as to taxes having accrued. It results from this that these cases, as we shall later show, are not authorities against the creation and immediate effect of the Homestead Exemption Act of February 20, 1937.

Under the statutes providing for the assessment of taxes in force for the tax year, the returns for taxes are required to be made by the owner or taxpayer before December 31st, and the tax assessor is allowed, through the third Monday in January of each year, to make a supplemental return or list of prop-

---

[1] Ante, p. 353.

erty, which may have been filed or returned before the first day of January of such tax year (Gen.Acts 1935, p. 274, § 29); and the duty is placed upon the property owner or taxpayer to duly return for taxes. General Revenue Law, General Acts 1936, Ex.Sess. p. 4, § 1, amending Gen.Acts 1935, p. 275, § 31.

It is provided by Gen.Acts of 1935, p. 284, § 50, when assessments must be complete and such assessments entered on the assessment list, which is required not to be later than the first Monday in February of each year; and it is further provided that the assessor shall certify the correctness of returns so required to be made and valuations fixed by him to the State Tax Commission, and such list of property shall be by the assessor delivered to the Board of Review not later than the second Monday in March.

Section 56, p. 286, of the same act, provides that after the books of assessment have been completed, the State Tax Commission or its agent or assistant shall certify on the books of assessment that the same have been examined and corrected by him by comparing the books of the assessment with the returns showing final valuations, items of assessment, etc.

The provisions of section 57 are, that when the books of assessment have been completed, as provided by the act, the tax assessor must, without delay, make out in triplicate upon forms furnished him by the commission, the abstract of real and personal property as contained in the assessment book; that such abstract of assessment so made by the assessor is required to "be approved and certified to by the State Tax Commission * * * not later than the second Monday in August of each year"; and that the State Comptroller shall report to the Governor any assessor who has for five days failed to forward to the State Comptroller the abstract of assessment of his county so made and approved, and the Governor is required forthwith to cause such tax assessor to make such official report. Gen.Acts 1935, p. 286, §§ 56 and 57.

We have indicated that the tax assessor discovering escaped property shall list and return the same as "escaped," giving notice and holding a hearing for objections, and this is specifically provided for in section 45, p. 280 of the General Acts of 1935; and it further provides that an appeal may be had to the circuit court from the action of the Board of Review as to such escaped taxes. State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427.

Adverting to later provisions of the Revenue Act, section 58 provides that after the books of assessment have been completed, as provided, the assessor must enter in a book, in a concise form, the amount of taxes assessed in the manner provided, and that such book must be turned over to the tax collector on or before the 15th day of September of such year.

Article 3 of the General Act of 1935, p. 289, et seq., provides for the Board of Review, in its section 67; and section 72 provides that when the assessor has completed the assessment, valuation, and equalization, he shall notify the Board of Review, and the board is required to meet on the second Monday in March of each year and sit at the courthouse of the county from day to day until the duties imposed are completed, which shall not be later than the first Monday in April, and to review, revise, and correct and fix the assessment valuation made by the tax assessor by raising or lowering the assessment, except such assessments as have been approved by the State Tax Commission.

It is further made the duty of the Board of Review by section 73 of the said act to make up a return upon the proper blanks, giving description of the property, etc., as to all details with returns and assessments delivered to it by the tax assessor, and to proceed to value and equalize the same in the manner prescribed. Gen.Acts 1935, p. 292.

The act concludes with section 411, p. 574, and provides that all laws or parts of law in conflict with the provisions of the act are repealed; that all provisions of existing laws relating to taxation and revenue which are not in conflict with the provisions of the act and "which are not herein expressly repealed" are not hereby repealed. Hence the pertinent provision, section 7, of the act of February 23, 1937, is that all laws and parts of laws "in conflict with the provisions of this Act be and the same are hereby expressly repealed." Special Session, 1936–37, § 7.

It is provided by section 372 of the Revenue Act (Gen.Acts 1935, p. 566, § 372), as follows: "From and after the first day of October of each year, when property becomes assessable the State shall have a lien upon each and every piece or parcel of property owned by any taxpayer for the pay-

ment of all taxes which may be assessed against him and upon each piece and parcel of property real or personal assessed to owner unknown which lien shall continue until such taxes are paid, and the county shall have a like lien thereon for the payment of the taxes which may be assessed by it; and if such property is within the limits of a municipal corporation such municipal corporation shall have a like lien thereon for the payment of the taxes which may be assessed by it. These liens shall be superior to all other liens and shall exist in the order named and each of such liens may be enforced and foreclosed by sale for taxes as provided in this Act, or as other liens upon property are enforced."

■ This provision for a lien, of necessity, is the result only after all statutory requirements of due assessment and adjudication thereon, actually or theoretically, by the reviewing boards have been had, done, or time for review has expired by the operation of law and the county tax levy has been made. Then does the lien become fixed and final. Until this time the lien and its amount is inchoate.

It is further provided in the General Revenue Act that exemptions from ad valorem taxes fixed are exclusive; and that any parts of laws, general, special, or local, granting or attempting to grant any exception from ad valorem taxation, "except as in this Act provided," are specifically repealed, as indicated above. Section 374, p. 566. Thus it is apparent that the Legislature had clearly in mind, in passing the General Revenue Bill, that exemptions from ad valorem taxation must be made exclusively by legislative prerogative. State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427.

Moreover, we observe that the Sales Tax Act, approved February 23, 1937, was pending and considered as part of the general taxing scheme of the several acts mentioned. Section 21 of the Sales Tax Act provides that the replacement of the several funds lost by reason of the proposed homestead exemption shall be a first charge on the proceeds of the sales tax. This, with other provisions, indicate that the two acts should run concurrently, that when the sales tax comes in, the ad valorem tax on homesteads for state purposes should go out.

With this understanding of the legislative history of the act and its companion act, creating the homestead exemption, and the necessary provisions for due enforcement of said act without undue embarrassment in the administration of the revenue system of the state [Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25; Frazier v. State Tax Commission (Ala.Sup.) 175 So. 402 [1]], we may now inquire if the act of February 23, 1937, offends any provision of the organic law of the state.

Under section 100, Constitution, no obligation or liability held or owned by the state shall ever be remitted, released or diminished, or extinguished except by payment. Section 211 provides that all taxes levied on property shall be assessed in exact proportion to its value.

Since the opinion in Swann v. State, 77 Ala. 545, the principle has been given effect, that one who owns taxable property at the beginning of the tax year is liable for the ad valorem tax on it for that year. Bains Bros. Inv. Co. v. Purdie, 180 Ala. 333 (5), 60 So. 920; State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527 (14).

In the latter case, we held that the owner of property on October 1st cannot have his liability for the tax for that year remitted by legislative enactment thereafter made, because that would violate section 100, Constitution. That was also the ruling in Union Bank & Trust Co. v. Phelps, supra.

■■ So that any act which would reclassify owners of property taxable on October 1, so as to relieve them or some of them from a liability which had previously accrued, could not stand under the restrictions of section 100, Constitution. But that section must be construed in harmony with other constitutional legislative powers. The power to tax which a Legislature has is without restriction, except as is set out in the Constitution, State or National.

■ Section 211, Constitution, does not in any sense require all property to be taxed. The Legislature may classify it for taxation, exempting some based upon its inherent nature or its use. Pullman Car & Mfg. Corporation v. Hamilton, 229 Ala. 184, 155 So. 616; State v. Alabama Educational Foundation, supra.

There is no feature of the Constitution which provides at what time such legislative classification of property shall occur, provided it is done within the current tax year. The exemption provided in Union Bank &

---

[1] Ante, p. 353.

Trust Co. v. Phelps, 228 Ala. 236, 153 So. 644, was enacted after the expiration of the current tax year. It may be done after October 1st for the current tax year, and in so doing section 100, supra, as we have interpreted it, would not be violated.

Considering the power thus to select and classify property for taxation in connection with the want of power to discharge a liability to the state, we think it is consistent to hold that they were not intended to conflict. So that their meaning may be thus expressed when considered in pari materia.

■ After October 1st, the Legislature cannot relieve one, by classification of taxpayers, or otherwise, from the payment of ad valorem taxes for that year on property owned by him October 1st, to the extent the Legislature subjects such property to such taxes for that year, whether the act of the Legislature either in subjecting it or exempting it occurred before or after October 1st.

■ Section 100 of the Constitution was not intended to control the power of the Legislature in selecting or the exempting of property of certain classes from taxation. But as to such property as is and remains taxable by act of the Legislature, its owner on October 1st is and remains liable for the payment of the tax, and he or the class of taxpayers to which he belongs cannot be relieved of its payment by act of the Legislature effective after October 1st.

On the same theory, the Legislature was not intended by section 100 of the Constitution to be restricted in prescribing the sources of revenue for its several governmental functions, so as to prevent it from directing that on certain selected sorts of property there shall be no ad valorem tax for state purposes, but that the usual tax on it shall be levied and collected for counties and cities, as heretofore provided by law. Real estate, including the homestead, shall be assessed as heretofore, and from it a deduction shall be made of the amount of the exemption for state purposes, which shall not affect the county and city taxes based on the assessment as made before the exemption is deducted.

Section 100 was no more intended to curtail the power of the Legislature in determining the sources of revenue for the several governmental needs than the power to select certain property for taxation and to exempt others.

The fact that such adjustments relieve all taxpayers from the payment of taxes, which by such adjustment is made exempt, either for all purposes, or only for state purposes, is but a necessary incidental result of an exercise of legislative power which was clearly not intended to be curtailed.

We are of opinion and hold that the Homestead Exemption Act, approved February 20, 1937, defining homesteads as "herein used" and exempting such "homesteads from such State ad valorem taxation," became effective on approval, and such act exempts from taxation such homesteads from such state ad valorem taxation for the tax year 1936–1937 and thereafter.

Respectfully submitted,
JOHN C. ANDERSON,
Chief Justice,
LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
.VIRGIL BOULDIN,
JOEL B. BROWN,
ARTHUR B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.

