ALABAMA GREAT SOUTHERN RAIL-
ROAD COMPANY, Central of Georgia
Railroad Company, Illinois Central Gulf
Railroad Company, Louisville & Nash-
ville Railroad Company, Seaboard Coast
Line Railroad Company, St. Louis-San
Francisco Railway Company, Southern
Railway Company, and Western Railway
of Alabama, Plaintiffs,

v.

Ralph P. EAGERTON, Jr., Commissioner
of Revenue and S. L. Evans, Assistant
Commissioner of Revenue, Defendants.

Civ. A. No. 79–173–N.

United States District Court,
D. Alabama, N. D.

June 20, 1979.

M. R. Nachman, Jr., Steiner, Crum &
Baker, Montgomery, Ala., Everett B. Gib-
son and Gregory G. Fletcher, Laughlin,
Halle, Regan, Clark & Gibson, Memphis,
Tenn., Charles E. Porter, Rushton, Stakely,
Johnston & Garrett, Montgomery, Ala.,
Robert C. Moore, Gen. Atty., Louisville &
Nashville Railroad Co., Louisville, Ky.; and
William C. Antoine, Gen. Sol., Taxes, and
James W. McBride, Gen. Atty., Taxes,
Southern Railway System, Washington,
D.C., for plaintiffs.

Herbert I. Burson, Jr., Counsel, and Ron
Bowden, Asst. Counsel, Dept. of Revenue,
State of Alabama, Montgomery, Ala., for
defendants.

## MEMORANDUM

JOHNSON, Chief Judge.

In this suit eight interstate rail carriers
contend that the State of Alabama is dis-
criminating against interstate commerce by
assessing rail transportation property at a
value that has a higher ratio to the true
market value than the ratio that other com-
mercial property bears to its true market
value. They allege that this action violates
the Commerce Clause and the Supremacy
Clause of the United States Constitution,
the Equal Protection Clause and the Due
Process Clause of the Fourteenth Amend-
ment to the United States Constitution, and
the Railroad Revitalization and Regulatory
Reform Act of 1976, 49 U.S.C. § 26c (1976),
as revised by the Revised Interstate Com-
merce Act, Pub.L. No. 95–473, § 11503, 92
Stat. 1445.[1]  Plaintiffs are Alabama Great

---

1. The Railroad Revitalization and Regulatory
Reform Act of 1976, Pub.L. No. 94–210, § 306,
90 Stat. 54, was enacted on February 5, 1976,
and codified at 49 U.S.C. § 26c (1976).  On

October 13, 1978, certain statutes related to
transportation were collected, revised, codified,
and enacted as Title 49 of the United States
Code.  Although there were no substantive

Southern Railroad Company, Central of Georgia Railroad Company, Illinois Central Gulf Railroad Company, Louisville & Nashville Railroad Company, Seaboard Coast Line Railroad Company, St. Louis-San Francisco Railway Company, Southern Railway Company, and Western Railway of Alabama. Defendants are Ralph P. Eagerton, Jr., Commissioner of Revenue of the State of Alabama, and S. L. Evans, Assistant Commissioner of Revenue. Jurisdiction is based on 49 U.S.C.A. § 11503 and 28 U.S.C. §§ 1331, 1337.

The case at bar is unusual in that no facts are in dispute and the parties agree that the federal statute prohibiting tax discrimination against rail transportation property, 49 U.S.C.A. § 11503, controls the legal dispute. The parties do not agree, however, on the applicability of this statute to the ad valorem tax imposed for the 1979 tax year.

An examination of the federal and state statutory schemes pertinent to this issue is instructive. The Revised Interstate Com-

merce Act prohibits a state from assessing "rail transportation property at a value that has a higher ratio to the market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." 49 U.S.C.A. § 11503(b)(1). The statute defines "assessment" as "valuation for a property tax levied by a taxing district." *Id.* § 11503(a)(1). It set February 5, 1979, as the date upon which the provision would take effect.[2]

Under the law of Alabama the assessment ratio of rail transportation property has been higher than the assessment ratio of other commercial and industrial property.[3] In apparent recognition of the conflict with the federal statute, the Alabama legislature passed a law reducing the assessment ratio of rail transportation property to that of other commercial property.[4]

changes, § 26c was revised and became § 11503. *See* Revised Interstate Commerce Act, Pub.L. No. 95–473, § 11503, 92 Stat. 1445. This recent revision of the United States Code has not yet been published. The unofficial codification, 49 U.S.C.A. § 11503 (Supp.1979), has been published. In referring to this statute this memorandum will cite the unofficial codification.

2. When the statute was originally enacted in 1976 as Pub.L. No. 94–210, § 306, 90 Stat. 54, paragraph (2)(b) of the text provided that the effective date would be three years after the date of enactment. When the statute was enacted in 1978 as part of the Revised Interstate Commerce Act, Pub.L. No. 95–473, § 11503, 92 Stat. 1445, paragraph (2)(b) was omitted from the text of this section because it was only a temporary provision. The statute provided that the effective date of § 11503 remained the same, February 5, 1979.

3. Article XI, § 217 of the Constitution of Alabama, as amended on November 7, 1978, sets forth four classes of property for ad valorem tax purposes and states that property shall be assessed at the following ratios of assessed value to fair market value: Class I—30 percent; Class II—20 percent; Class III—10 percent; Class IV—15 percent. Under this article the business property of utilities is considered Class I property, while other commercial and industrial property is considered Class II property. The Alabama Code classifies railroad companies as public utilities. Ala.Code § 40–21 1 (1975).

4. On August 7, 1978, the legislature passed Act No. 46 to implement the provisions of Article XI, § 217 of the Alabama Constitution. The act concerned the assessment rates with respect to ad valorem taxes levied by the state and local authorities. It removed rail transportation property from the Class I category. The pertinent language follows:

[A]fter September 30, 1979, and only to the extent required by Title III, § 306 of Pub.L. 94–210 (the Railroad Revitalization and Regulatory Reform Act of 1976 [codified as 49 U.S.C. § 26c] ), "transportation property," as that term is defined in the aforesaid statute, as heretofore or hereafter amended, or in any subsequent statute of similar import, shall not be assessed as Class I property.

1978 Ala.Acts, Act No. 46, § 2(b)(1).

Defendants rely on the Alabama statute to bolster their contention that the federal statute does not take effect in Alabama until the 1980 tax year. They assert that by specifying that "after September 30, 1979" transportation property will no longer be categorized as Class I property, the Alabama Legislature has shown its intent that the federal statute not take effect until the 1980 tax year. They cite no legislative history, but they allege that the Legislature must have known that the 1979 tax year encompasses the period from October 1, 1978, through September 30, 1979. They argue that because the 1980 tax year begins on October 1, 1979, the "after September 30, 1979" date set by the Legislature for reduction of the assessment ratio of railroad property reflects the Leg-

The question presented by this suit is not whether Alabama must reduce the assessment ratio of rail transportation property to bring it in line with the assessment ratio of other commercial and industrial property, nor what the proper ratio will be,[5] but whether the ratio must be reduced for the 1979 tax year. Although both parties recognize that the effective date of the controlling federal statute, 49 U.S.C.A. § 11503, is February 5, 1979, they disagree on the significance of that date. Plaintiffs contend that when the statute went into effect on February 5, 1979, it required the assessment ratio of rail transportation property to be reduced for the 1979 tax year. Defendants contended that because the federal statute did not become effective until February 5, 1979, it has no impact on the current tax year, and only necessitates a change in the assessment ratio of rail transportation property for the 1980 tax year.

The Alabama Code prescribes in detail the method of assessing and taxing property owned by railroad companies. Ala.Code §§ 40–21–1—40–21–34 (1975). The state department of revenue is ordered to assess for taxation all the property of all the railroad companies operating within Alabama. Id. § 40–21–1. Each company is required by law to submit a statement of the property it owns to the department of revenue between January 1 and March 1 each year. Id. § 40–21–2. These yearly reports must report the property owned by the railroad company on the preceding October 1. Id. § 40–21–4. After the statements are submitted, the department of revenue must examine the information, determine the valuation of the different items of property, and assess the property at a certain percent of its reasonable value.[6] Id. § 40–21–17. If the statement has not been submitted by March 1, the department may add to the assessment a penalty of 25 percent of the assessment. Id. After determining the true value of the property, the department of revenue must report the value of the property to the tax assessor of each county "on or before July 1, or as soon thereafter as practicable." Id. § 40–21–34. The assessor must then enter in the book of assess-

islature's understanding that the federal statute would not apply until the 1980 tax year. Defendants contend that the Legislature by inference recognized that the ad valorem taxes for the 1979 tax year became fixed on October 1, 1978, prior to the effective date of the federal statute prohibiting tax discrimination against rail transportation property.

Plaintiffs allege that the "after September 30, 1979" language supports their theory that the reduction in assessment ratio of railroad property must occur in the 1979 tax year. They contend that although the 1979 tax year ends on September 30, 1979, the 1979 tax is not due until October 1, 1979, or thereafter. Thus, they conclude that the Alabama Legislature understood that the federal statute at issue did apply to the 1979 tax year. They cite no legislative history. They do refer to one Alabama case, In re Opinions of the Justices, 234 Ala. 358, 175 So. 690 (1937). There the Alabama Supreme Court held that a statute passed February 20, 1937, exempting homesteads from ad valorem taxes for the 1936–1937 tax year did not violate the Alabama Constitution. In reaching this conclusion the court stated: "In common parlance, the terms [exempted from ad valorem taxes beginning October 1, 1937] mean that the exemption declared was to apply to the taxes of the current tax year, 1936–37. . . . Such is the legislative intent." Id. at 364, 175 So. at 693.

This Court concludes that the parties are pursuing an issue that is academic. The intent of the Alabama Legislature is relevant in construing the Alabama statute, but it is not helpful in construing the federal statute. And under the Supremacy Clause of the United States Constitution, the federal statute preempts a state statute with conflicting terms or which produces results inconsistent with the purposes and objectives of the federal statute. Here the federal statute prohibiting tax discrimination against rail transportation property is controlling. Accordingly, its terms and objections are the proper focus of this litigation; the terms of the state statute are not.

5. The parties agree that rail transportation property will be categorized as Class II property with an assessment ratio of 20 percent when the required reduction in assessment ratio takes place.

6. The statute provides that the property of utilities shall be assessed at 30 percent of its reasonable value. When the federal statute prohibiting tax discrimination against rail transportation property becomes applicable, railroad property will no longer be assessed at 30 percent, see n. 5, supra, but the other provisions of this statute will continue to apply to rail companies.

ments the property described by the department of revenue. *Id.*

In addition to the above provisions, the Alabama Code states that "[f]rom and after October 1 of each year, when property *becomes assessable* the state shall have a lien upon each and every piece or parcel of property . . . for the payment of all taxes which *may be assessed* against him . . ., which lien shall continue until such taxes are paid . . . ." *Id.* § 40–1–3 (emphasis added).

Defendants argue that because the 1979 tax returns are based on the property owned by railroad companies on October 1, 1978, the February 5, 1979, effective date is too late to require a reduction in the assessment ratio of railroad property for the 1979 tax year. Plaintiffs argue that as of February 5, 1979, states were prohibited from assessing rail transportation property at a higher ratio than other commercial and industrial property. They assert that under the Alabama statutes the department of revenue begins assessing railroad property after March 1. Thus, they allege that as of March 2, 1979, when the state department of revenue began its valuation and assessment process for the 1979 tax year, the department was required by federal law to reduce the assessment ratio of railroad property.

The Court concludes that the plaintiffs must prevail. Since there is no question that the federal statute prohibiting tax discrimination against rail transportation property is dispositive,[7] that the statute precludes states from *assessing* railroad property at a higher assessment ratio than

other commercial and industrial property, and that the statute became fully effective on February 5, 1979, the parties have focused on the timing of the assessment done by the state. As plaintiffs contend, the chronology of the statutory scheme for assessing and taxing railroad property indicates that the state does not *assess* rail property until March 2 or later each year. By explicit statutory provision the assessment is based on forms submitted by the railroad companies. Under the statute the forms are not even due until March 1. After that time the department of revenue determines the valuation of the property and *assesses* it. *See* Ala.Code § 40–21–17.

The thrust of defendants' position is that assessment occurs on October 1 each year. In support of their theory they refer to *United States v. Alabama,* 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941), and to Alabama Code § 40–1–3. In *United States v. Alabama, supra,* the state sold at tax sales certain tracts of land owned by the United States because the liens for the taxes had not been satisfied. The United States asserted that the liens were invalid because at the time it acquired the land [October 1, 1936; December 10, 1936; and March 7, 1937] "the amount of the taxes had not been ascertained, as the values *had not then been assessed* and the rates of taxation had not been fixed." 313 U.S. at 279, 61 S.Ct. at 1013 (emphasis added). The issue was whether the United States was subject to a lien which had not yet become "fixed and final" at the time of purchase. *Id.* The Supreme Court recognized that

---

**7.** Subsequent to filing this suit plaintiffs chose not to address the substantive constitutional issues, instead proceeding on the sole theory that the tax imposed by the state of Alabama violates the Supremacy Clause. The Court agrees that the Supremacy Clause controls, and does not reach the substantive constitutional issues.

The Court further notes that this case differs from one in which the Supremacy Clause is invoked and the parties disagree as to whether the state statute and the proposed state action conflict with the terms, purposes, or objectives of the federal statute. Here all agree that continuing to assess rail property at a 30 percent

assessment ratio violates the federal statute. The question instead is more refined: when the federal statute becomes effective February 5, 1979, is it invalid to assess rail property at a 30 percent assessment ratio for the 1979 tax year and then reduce the assessment ratio to 20 percent for the 1980 tax year and those subsequent?

Additionally, the Court remarks that neither party has presented any legislative history on this narrow point. A search by the Court has not revealed any discussion by Congress concerning the impact of the effective date on the statutory schemes by which various states impose ad valorem property taxes.

"[t]here is no question that the State thus undertakes to create an inchoate lien upon the lands as of the tax day [October 1], a lien which is to be effective for the amount of the taxes for the ensuing year as these are fixed by the defined statutory method." *Id.* at 280, 61 S.Ct. at 1013. The Court held that the statutory scheme was valid and that the liens could be enforced against the United States. Nowhere in its opinion did the Court address the issue of the timing of the assessment done by the state. It did, however, indicate that although the amount of property to be taxed in a tax year was determined on October 1 of the preceding year and the lien created that day was effective for the amount of taxes due in the subsequent tax year, the assessments were not made until a few months later. Indeed, the Court recognized that a number of the factors involved in setting the property tax were not determined until a few months later. For example, the rates for certain taxes for the 1937 tax year were not set until February 8, 1937, and June 14, 1937, although the property to be taxed was that owned on October 1, 1936. *Id.* at 279, 61 S.Ct. 1011. In sum, this case does not support defendants' argument that the state of Alabama assesses property on October 1 of each year.

Moreover, the language of the pertinent Alabama statute undercuts defendants' position. It provides not that property is assessed on October 1, but that property "becomes assessable" on that date and that liens are created then for taxes which "may be assessed" against the property. Ala. Code § 40–1–3. The words of the statute are conditional; the lien is predicated upon the happening of a potential event in the future—the assessment and taxation of the property.

This Court also notes that under Alabama Law a revenue act is applicable to the entire taxable year in which it is enacted even though it does not become effective until the taxable year is partially over. *State v. First National Bank of Montgomery,* 253 Ala. 426, 428, 44 So.2d 905, 906 (1950).

Based on the statutes and cases discussed above, the Court concludes that the federal statute prohibiting tax discrimination against rail transportation property which became effective February 5, 1979, requires the state of Alabama to reduce the assessment ratio for railroad property to the assessment ratio of other commercial and industrial property for the 1979 tax year.

An order will be entered accordingly.