504 F.Supp. 907 (1980)
MISSOURI PACIFIC RAILROAD COMPANY et al., Plaintiffs,
v.
TAX DIVISION OF the ARKANSAS PUBLIC SERVICE COMMISSION et al., Defendants.
No. LR-C-80-189.
United States District Court, E. D. Arkansas, W. D.
December 3, 1980.
On Motion for Reconsideration January 12, 1981.
*908 George E. Pike, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiffs.
Frederick K. Campbell, Asst. Atty. Gen., State of Arkansas, Little Rock, Ark., for defendants.

MEMORANDUM OPINION
ROY, District Judge.
This is an action in which the plaintiffs challenge the validity of the assessment of its 1979 Arkansas state ad valorem property taxes and request present and future related relief.
The plaintiffs in this action are:
Missouri Pacific Railroad Company ("Missouri Pacific") is a Delaware corporation with its principal place of business in the State of Missouri. Doniphan, Kensett & Searcy Railway Company ("Doniphan") is an Arkansas corporation with it principal place of business in the State of Missouri. St. Louis Southwestern Railway Company ("Cotton Belt") is a Missouri corporation with its principal place of business in the State of California. St. Louis-San Francisco Railway Company ("Frisco") is a Missouri corporation with its principal place of business in the State of Missouri. The Kansas City Southern Railway Company ("KCS") is a Missouri corporation with its principal place of business in the State of Missouri. Louisiana & Arkansas Railway Company ("L&A") is a Delaware corporation with its principal place of business in the State of Missouri. Arkansas Western Railway Company ("Arkansas Western") is an Arkansas corporation with its principal place of business in the State of Missouri. Warren & Ouachita Valley Railway Company ("Warren & Ouachita") is an Arkansas corporation with its principal place of business in the State of Arkansas. W. M. Gibbons, Trustee ("Gibbons"), is the duly qualified, appointed and acting Trustee of the Property of Chicago, Rock Island & Pacific Railroad Company, Debtor ("Rock Island"), a Delaware corporation, with its principal place of business in the State of Illinois. All of the plaintiffs named in this paragraph are interstate railroad companies operating in and through the State of Arkansas subject to the rules and regulations of the Interstate Commerce Commission, to the laws of the United States, and to the laws of the State of Arkansas.
Trailer Train Company ("Trailer Train") is a Delaware corporation with its principal place of business in the State of Illinois. Railbox Company ("Railbox") is a Delaware corporation with its principal place of business *909 in the State of Illinois. The plaintiffs named in this paragraph are private car companies operating in and through the State of Arkansas subject to the rules and regulations of the Interstate Commerce Commission, the laws of the United States, and the laws of the State of Arkansas.
Arkansas & Memphis Railway Bridge and Terminal Company ("Bridge and Terminal") is a Tennessee corporation with its principal place of business in the State of Missouri. Bridge and Terminal is a railway bridge company operating in the State of Arkansas, subject to the rules and regulations of the Interstate Commerce Commission, the laws of the United States, and the laws of the State of Arkansas, and as such is the owner of transportation property.
The transportation property of all plaintiffs involved herein, which is located in the State of Arkansas, is subject to ad valorem property taxation in Arkansas in accordance with the Constitution and laws of the State of Arkansas, subject to the Constitution laws of the United States of America.
The defendants are the various commissions and bodies of the State of Arkansas and the officials responsible for carrying out the assessing of the ad valorem tax and certifying the assessments and thereafter collecting taxes due upon property belonging to the plaintiffs under the provisions of the appropriate Arkansas statute.
The complaint in this case alleges inter alia that this Court has jurisdiction of the parties hereto and the subject matter hereof pursuant to the provisions of 49 U.S.C. § 11503 (the "4-R Act"), 28 U.S.C. § 1331 (this cause arising under the Constitution and laws of the United States and the amount in controversy herein exceeding the sum of $10,000.00, exclusive of interest and costs) and 28 U.S.C. § 1337 (commerce).
The complaint further alleges that each plaintiff's 1979 assessment of its transportation property located in Arkansas bears a ratio to the true market value of each plaintiff's transportation property in Arkansas which is more than 5 percent higher than the ratio which the assessed value of all other property, including other commercial and industrial property, in the State of Arkansas bears to the true market value of all such other property.
As a result thereof, it is also contended that each plaintiff's assessment for ad valorem property tax purposes for the year 1979, and the collection of taxes thereon, is in violation of 49 U.S.C. § 11503, and is invalid, null and void to the extent that any such assessment exceeds the ratio which the assessed value of all other property in the State of Arkansas, including other commercial and industrial property, bears to the true market value of all such other property.
It is also alleged that plaintiffs are being arbitrarily and systematically discriminated against and are being deprived of their property in violation of their rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution of the United States of America.
The statute upon which plaintiffs' claims are based is 49 U.S.C. § 11503 which provides in pertinent part as follows:
"(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
"(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of other commercial and industrial property.
"(2) Levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
"(c) Notwithstanding § 1341 of Title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and *910 the States to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction ..."
In the complaint plaintiffs pray inter alia for a declaratory judgment that the 1979 assessment of their transportation property in the State of Arkansas, to the extent such assessment violated the provisions of 49 U.S.C. § 11503, be held invalid; and that the named defendants be enjoined from assessing or collecting any portion of the 1979 ad valorem property taxes to the extent such assessments or collections are in violation of 49 U.S.C. § 11503; that the defendants be ordered to reassess the transportation property of the plaintiffs in accordance with the provisions of the applicable statute[1] for the year 1979 and for all future years.
Concurrent jurisdiction is granted to federal district courts and to state courts by 49 U.S.C. § 11503(c) to prevent discrimination between the assessment of rail transportation property and commercial and industrial property located within this state.
The defendants have filed a motion to dismiss plaintiffs' complaint on the following grounds:
I. The complaint does not set forth facts sufficient for this Court to exercise jurisdiction under 49 U.S.C. § 11503(c).
II. The plaintiffs have a plain, speedy and adequate remedy under the laws of the State of Arkansas.
III. The complaint fails to state a claim upon which relief can be granted.
(a) The complaint does not present to the Court a case or controversy within the meaning of Article III of the Constitution of the United States.
(b) Under principles of federalism and comity, a state court must first be given an opportunity to rule on the issues raised in the complaint before this Court should exercise its jurisdiction.
Without considering the merits of the defendant's other contentions, the Court finds this is a proper case in which to apply the doctrine of abstention. Perhaps no other facet of State Government is vital to its overall operations as its system of taxation. To interfere with one aspect to this vital state operation without consideration of the entire tax picture might result in severe repercussions to Arkansas State Government. Certainly this Court does not have the expertise in this field, nor the overall knowledge of the Arkansas taxation system which is available to the Arkansas courts through the Tax Division of the Arkansas Public Service Commission and the Arkansas Transportation Commission. The plaintiffs have contended they cannot get a speedy and adequate remedy under the laws of the State of Arkansas, but they have not attempted to pursue any action under 49 U.S.C. § 11503 in the state court. This statute is available to them for relief in state court as well as in federal court.
A state court should first be given an opportunity to rule on the issues raised in the complaint before this court should exercise its jurisdiction. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 27 L.Ed.2d 669 (1971).
The policy against federal intervention in state civil proceedings was again recognized by the United States Supreme Court in Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), reh. denied, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975). There the Court said:
"Central to Younger was the recognition that ours is a system in which, the National Government, anxious though it may be to vindicate and protect federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."
*911 420 U.S. at 601, 95 S.Ct. at 1207. Two years later in Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the court expounded on the abstention doctrine as it relates to civil cases by announcing that plaintiffs need only be given an opportunity to present their federal claims in state court in order for Younger and Huffman to apply.
Though the abstention cases cited above refer to constitutional claims by plaintiffs and do not refer to cases, like the present one, where concurrent jurisdiction is conferred by federal statute, the policy reasons underlying Younger and Huffman, that of comity and federalism, are appropriate here.
The abstention doctrine operates to prevent federal court interference with legitimate activities of the state. See Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Certainly, no state activity is more crucial than the manner in which each sovereign state taxes property located within its borders. This Court takes judicial notice of the fact that the Arkansas Supreme Court has recently ordered a statewide reappraisal and reassessment program which will require the reappraisal and reassessment of all property in the state. Arkansas Public Service Commission v. Pulaski County Board of Equalization, 266 Ark. 64, 582 S.W.2d 942 (1979). Under the court's order, all property in the state, regardless of its character, will be taxed according to its true market value. Action has already been started by the appropriate assessing officials to comply with the Arkansas Supreme Court's orders.
Although this case is prospective in application, it does indicate that Arkansas courts are cognizant of past inequities in the Arkansas tax structure and orders have been issued to correct any such inequities. There is no reason for this Court to assume that if plaintiffs file their cause of action under 49 U.S.C. § 11503 in the appropriate state court that they will not receive a fair and speedy trial in the Arkansas State Court.
The principles of comity and federalism require this Court to abstain from acting further herein. See Moore v. Sims, supra; Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, supra; Huffman v. Pursue, Ltd., supra; Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Dismissal of the federal suit "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." Trainor v. Hernandez, supra, 431 U.S. at 441, 97 S.Ct. at 1917; Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). See, also Moore v. Sims, supra, 442 U.S. at 430, 99 S.Ct. at 2380-2381. Such an opportunity is available in the Arkansas system of courts.
In the case of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935), Mr. Justice Stone stated at page 185, 55 S.Ct. at 385.
"* * * It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."
As the Court noted in Trainor v. Hernandez, supra, federal courts should recognize the principle that state courts have equal responsibility with federal courts to safeguard constitutional rights. See Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed. 2d 505 (1974).
This Court adheres firmly to the principle that:
"`the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" Huffman v. Pursue, Ltd., 420 U.S. at 601, 95 S.Ct. at 1206-1207, quoting Younger v. Harris, 401 U.S. at 44, 91 S.Ct. at 750. See, also Juidice v. Vail, 430 U.S. at 334, 97 S.Ct. at 1217.
*912 Certain of the plaintiffs have tendered, under protest, the disputed portions of their 1979 Arkansas ad valorem taxes into the registry of this Court in three separate deposits. It is hereby ordered that these deposits be released to the plaintiffs. These funds may then be deposited in the state Ad Valorem Tax Protest Fund as provided for in Ark.Stat.Ann. § 84-612 (Repl. 1980).
Accordingly, this cause is dismissed without prejudice to the plaintiffs' right to seek relief in the Arkansas State Courts. An Order will be entered to this effect.

On Motion for Reconsideration
On December 3, 1980, the Court entered its Memorandum Opinion and Order, wherein it declined, under the abstention doctrine, to assume jurisdiction over the instant proceeding. The plaintiffs filed a motion for reconsideration on December 15, 1980, pursuant to which a hearing was held on December 17, 1980. Having reviewed the matter before it, including the briefs which have been filed by both sides, the Court concludes that its original decision to abstain was proper. The opinion and order will be modified, however, to the extent that instead of dismissing the complaint, jurisdiction will be retained, pending the disposition of the claims herein by the state courts. This modification is made in light of the Eighth Circuit's recent decision in Coley v. Clinton, 635 F.2d 1364 (1980), wherein abstention was required but retention of federal jurisdiction was nevertheless mandated. A second modification will be that the disputed monies which have been deposited into the registry of this Court may remain there during the pendency of the plaintiffs' appeal of this order.
With respect to the abstention issue, the Court adheres to the reasoning in its previous opinion and would add the following comments as well. As previously noted, 49 U.S.C. § 11503(c) provides that the federal district courts have jurisdiction "concurrent with other jurisdiction of courts of the United States and the states" to prevent violation of the "4-R" Act. The railroads have contended that this legislative grant of concurrent jurisdiction offers a plaintiff suing under this Act a choice of forums, and that once this choice has been made by the pleading party, the court chosen has no discretion to decline jurisdiction for any reason. Taken to its logical conclusion, this is an argument for the proposition that the "4-R" Act somehow impliedly nullifies the abstention doctrine. Nowhere can the Court find any basis for such a conclusion, either in the statute itself, its legislative history, or in any of the cases which have heretofore dealt with 49 U.S.C. § 11503. The issue of a federal court's prerogative to abstain in a "4-R" Act case is, to the best knowledge of this Court, a matter of first impression. While the plaintiffs correctly state that no other federal court has to date declined jurisdiction under the "4-R" Act, it does not appear that the abstention issue has ever specifically been raised or discussed.[1]
Unable to find any grounds for holding that the "4-R" Act nullifies the abstention doctrine, the Court adheres to its previous holding that in a case such as this, involving sensitive issues of purely local concern, abstention is not only proper but is required. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See, also, Coley v. Clinton, supra, wherein the Eighth Circuit reaffirmed the validity and necessity of the abstention doctrine.
An additional reason for allowing these issues to be first presented before a *913 state forum is the question of whether the failure of the railroads to raise the "4-R" Act as grounds for relief before the Arkansas Transportation Commission constitutes a waiver of the right to make a subsequent claim thereunder. At the December 17th hearing on the motion to reconsider, the plaintiffs acknowledged that the Act was in effect at the time of the proceedings before the Transportation Commission, and that they were well apprised of its existence and applicability, but that they deliberately chose not to invoke it at that time. It would thus seem appropriate for the issue of waiver or estoppel to be determined by the state courts.
In conclusion, it is the finding of the Court that the invocation of the abstention doctrine in the instant case is not an abdication of its duty and authority, but is rather an exercise of equitable discretion which is warranted by the extremely local nature of the issues at stake. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), quoting from Railroad Commission v. Pullman Co., supra:
"Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, * * *. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, `exercising a wise discretion', restrain their authority because of `scrupulous regard for the rightful independence of the state governments' and for the smooth working of the "federal judiciary * * *. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers."
319 U.S. at 332, 333, 63 S.Ct. at 1106, 1107.
It appears that intervention by the federal court in the Arkansas ad valorem property tax system will likely result in needless federal conflict with state policy, which the Supreme Court in Burford clearly sought to prevent. It is thus deemed that the best course is to defer to the state courts for the resolution of this matter of extremely local concern. See Louisiana Power and Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).
NOTES
[1] The plaintiffs also prayed for related relief concerning assessment of fines, penalties, and costs and requested that the Court allow plaintiffs to deposit certain funds into the registry of the court, pending outcome of this litigation.
[1] State of Tennessee v. Louisville and Nashville Railroad Co., 478 F.Supp. 199 (N.D. Tenn. 1979); Alabama Great So. Railroad Co. v. Eagerton, 472 F.Supp. 60 (D. Ala.1979); State of Arizona v. Atchison, Topeka and Santa Fe Railroad Co., No. Civ. 78-655 (D. Ariz.1979); Ogilvie v. The State Board of Equalization of the State of North Dakota, 492 F.Supp. 446 (D.N.D. 1980); Louisville & Nashville Railroad Co. v. Louisiana Tax Comm., 498 F.Supp. 418 (M.D. La.1980); Trailer Train Co. v. State Board of Equalization, No. Civ. C-80-4399-SW (N.D. Cal.1980); Atchison, Topeka and Santa Fe Ry. Co. v. Lennen, et al., Nos. 80-4172, 80-4173, 80-4176, and 80-4181 (D. Kan.1980); Burlington Northern, Inc. v. Martin, No. 80-1690 (D. Kan.1980).