## GENERAL AMERICAN TRANSPORTATION CORPORATION et al.

### v.

## LOUISIANA TAX COMMISSION et al.

### Civ. A. No. 80–807–A.

United States District Court,
M. D. Louisiana.

April 9, 1981.

Victor A. Sachse, III, Claude F. Reynaud, Jr., Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiffs.

Carmack M. Blackmon, Asst. Atty. Gen., Chief, Civil Division, Baton Rouge, La., for State of Louisiana.

JOHN V. PARKER, Chief Judge.

Plaintiffs in this action complain that the ad valorem assessment of their rail cars by the Louisiana Tax Commission violates Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, as amended by the Revised Interstate Commerce Act, 49 U.S.C. § 11503. The matter came on for hearing on plaintiffs' motion for a preliminary injunction, and the Court ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Rule 65(a)(2), Fed.R.Civ.P. Accordingly, the matter is be-

fore the Court for final action upon the merits.

Section 11503(b)(1) of Title 49, U.S.C., specifically declares that state action to assess "rail transportation property" at a value having a higher ratio to true market value than the ratio of assessed value of other commercial and industrial property, unreasonably burdens interstate commerce. Notwithstanding the provisions of the Anti-injunction Statute, 28 U.S.C. § 1341, 49 U.S.C. § 11503(c) confers jurisdiction upon federal district courts [1] to grant injunctive relief to the owners of "rail transportation property" when the ratio of assessed value to true market value exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property.

This Court has previously considered these federal statutory provisions as they relate to Louisiana's ad valorem assessment procedures. In *Louisville & Nashville Railroad Company v. Louisiana Tax Commission*, 498 F.Supp. 418 (M.D.La.1980), several interstate railroad companies complained that their rail transportation property was being assessed by Louisiana at a greater ratio than other commercial and industrial property in the state. There, it was stipulated that the property involved was "rail transportation property" within the meaning of Section 11503, and the Court permanently enjoined the Louisiana Tax Commission from assessing that property at a rate greater than that applied to other commercial and industrial property.

This action presents a variant of the same theme. Plaintiffs here are not railroad companies operating railroads. Each owns private rail cars, predominantly specialty cars such as tank cars, refrigerated cars, hopper cars, et cetera.

1. Federal district courts are granted jurisdiction "concurrent with other jurisdiction of courts of the United States *and the States.*" At least one federal court has declined injunctive relief under Section 11503, upon a finding that abstention should be applied and that the state courts should first be granted an opportunity to consider the issues. See *Missouri Pacific Railroad Co. v. Tax Division of the Arkansas Public Service Commission*, 504 F.Supp. 907 (E.D.Ark. 1980). Here the doctrine of abstention has not been raised by the parties, and the Court therefore has not considered it.

The evidence establishes that private car companies own the large majority of all specialty rail cars operated over the nation's rail carrier system. The railroads find it more economical to avoid the capital investment of such cars, and the private car companies also act as a supplement to freight cars owned by the railroads. The established procedure is that plaintiffs lease almost all of their cars to user-shippers, not the railroads. The user-shippers then make arrangements directly with the railroads for transportation of the products which they load into the cars under published Interstate Commerce Commission tariffs. A small number of plaintiffs' rail cars, less than 5 percent, are covered under leasing or pooling agreements directly with the railroads. The Louisiana Tax Commission concedes that those private rail cars which are covered by such leasing or pooling arrangements fall within the definition of "rail transportation property."

The situation presented to the Court is that, unlike the situation in *Louisville & Nashville Railroad Company v. Louisiana Tax Commission, supra*, the railroads neither own nor lease these specialty cars and plaintiffs neither own nor operate railroads. The Tax Commission disputes that the rail cars owned by plaintiffs fall within the definition of "rail transportation property."

Section 11503(a)(3) provides that "rail transportation property" means property as defined by the Interstate Commerce Commission "*owned or used* by a rail carrier providing transportation subject to the jurisdiction of the Commission." The Louisiana Tax Commission argues that since the cars owned by plaintiffs are leased to user-shippers which tender them to the railroads, they are not "used by" rail carriers, but on the contrary that they are "used by" the user-shippers. Thus, the state authorities argue that these cars are not "rail transportation property" within the meaning of the statute.

Under Louisiana law, plaintiffs' rail cars are classified as "public service properties." LSA–R.S. 47:1851(M). Under Section 18 of Article VII of the Louisiana Constitution of 1974, as amended, these cars are subject to assessment by the Louisiana Tax Commission at a ratio of 25 percent of fair market value. Under that section of the Louisiana Constitution, other commercial and industrial property except land, is assessed at a ratio of 15 percent of fair market value. Thus, if the rail cars involved are "rail transportation property," plaintiffs have satisfied the 5 percent threshold differential in assessment ratios required by 49 U.S.C. § 11503(c) and they are entitled to injunctive relief.

The rail cars owned by plaintiffs are listed in the Official Railway Equipment Register which is published as a tariff under Interstate Commerce Commission jurisdiction. Rates, rules and regulations, regarding private car movements are specified therein and revised from time to time, all under Interstate Commerce Commission supervision. 49 U.S.C. § 11122. Of course, the tariffs are paid to the rail car carriers by the user-shippers, not plaintiffs. The user-shippers pay the tariffs specified to the railroads and the railroads pay plaintiffs for each rail movement of a loaded private car at rates specified by tariffs published with the Interstate Commerce Commission. Moreover, the terms of the lease agreements entered into between plaintiffs and the user-shippers of the private cars are subject to regulation by the Commission. 49 U.S.C. § 11122(a)(2).

Pursuant to its authority under 49 U.S.C. § 11503(a)(3), the Interstate Commerce Commission has defined "rail transportation property" as "all property and other assets, *irrespective of ownership*, that comprise the entire operating unit devoted to rail transportation service." 49 C.F.R. § 1201[ii](33).

The evidence establishes that private rail cars are a long-standing and integral part of rail operations and that their use and movement is, in fact, regulated by the Interstate Commerce Commission. When being hauled by rail carriers, plaintiffs' private cars are clearly a part of the "entire operating unit devoted to rail transportation service" and, as such, they are "used by" a rail carrier providing transportation

subject to the jurisdiction of the Interstate Commerce Commission. Plaintiffs' private cars fall within the definition of "rail transportation property" under Section 11503, and Louisiana is prohibited from assessing them at a ratio exceeding the assessment ratio for other commercial and industrial property in Louisiana.

For the foregoing reasons, there will be judgment in favor of plaintiffs and against defendants permanently enjoining them from assessing the private rail cars owned by plaintiffs at a ratio which exceeds the ratio of fair market value applied in Louisiana to other commercial and industrial properties. Counsel for plaintiffs will prepare a formal judgment and submit it for approval as to form by counsel for defendants prior to submission to the Court.