GENERAL AMERICAN TRANSPORTA-
TION CORPORATION, et al.,
**Plaintiffs-Appellees,**

v.

LOUISIANA TAX COMMISSION, et al.,
**Defendants-Appellants.**

No. 81–3283.

United States Court of Appeals,
Fifth Circuit.

July 14, 1982.

Before DYER *, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

The Louisiana Tax Commission (Commission) appeals from a judgment which enjoins it from taxing private railroad-car companies at a higher rate than it assesses other commercial or industrial property. The Commission contends it is required to levy the higher tax rate by article VII, section 18 of the Louisiana Constitution, as amended in 1979. The district court, however, granted injunctive relief to General American Transportation Corp. and other private railroad-car companies on the grounds that the Louisiana Constitution imposed discriminatory tax treatment in violation of the Railroad Revitalization and Regulatory Reform Act (4–R Act), 49 U.S.C. § 11503.

## I. *Background*

Rail carriers regulated by the Interstate Commerce Commission (ICC) are required to provide facilities and equipment that are reasonably necessary to furnish safe and adequate car service on American railroads. 49 U.S.C. § 11121. A major part of this obligation is provision of specialty cars such as tank cars, refrigerator cars, and hopper cars. Rather than directly purchase this equipment, rail carriers typically develop leasing arrangements with private railroad-car companies that own specialty cars. In this manner, carriers avoid the capital expense of purchasing this specialized equipment and the additional operating expense of cleaning and returning these cars for further shipments.

The plaintiffs in the instant case are private railroad-car companies that own railroad specialty cars. Through what are termed "leasing" agreements, the private car companies provide most of their rolling stock on a monthly basis to shippers, who in turn pay the railroads to carry these cars over the railroad tracks in interstate com-

V. Elaine Boyle, Asst. Atty. Gen., Baton Rouge, La., for defendants-appellants.

Victor A. Sachse, III, Claude F. Reynaud, Jr., Baton Rouge, La., for plaintiffs-appellees.

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

merce.[1] The car companies then charge the railroads a mileage rate, which amount is then credited to the shipper. In essence, both the shipper and the railroad pay the car companies for the use of their rolling stock.

The car companies' railroad cars, like other Louisiana property, are subject to an ad valorem tax based on a percentage of the property's value. The percentage differs according to the character of the property. "Commercial and industrial property" is assessed at fifteen percent of its fair market value by article VII, section 18(B) of the Louisiana Constitution. "Public service property" is assessed at twenty-five percent of its fair market value. Louisiana has classified railroad specialty cars owned by private car companies as "public service property," assessed at the rate of twenty-five percent of their fair market value. LSA–R.S. 47:1851 (West Supp. 1982).[2]

## II. Discriminatory Tax Treatment

The car companies sought injunctive relief against the Commission, alleging that such an assessment violates 49 U.S.C. § 11503, enacted by Congress in 1978 to prohibit tax discrimination against rail transportation property. Section 11503(b)(1) specifically declares that state action to assess "rail transportation property" at a value that has a higher ratio to the true market value than the ratio of assessed value of other commercial and industrial property, unreasonably burdens interstate commerce. Section 11503(c) allows injunc-

tive relief to owners of rail transportation property in the following instance:

> [When] the ratio of assessed value to true market value of rail transportation property exceeds by at least 5%, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction.

Section 11503(a)(3) broadly defines this class of property:

> (3) "rail transportation property" means property, as defined by the Interstate Commerce Commission, *owned or used* by a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of Chapter 105 of this Title.

The Commission concedes the following: (1) railroad rolling stock *owned* by the railroads is "rail transportation property" protected against discriminatory tax assessment rates by section 11503; (2) railroad rolling stock owned by private car companies but *leased directly* to the railroads in "pooling" arrangements is also "rail transportation property" protected by the Act.[3] The Commission, however, alleges that the district court erred in treating the rolling stock of private car companies under "leasing" arrangements as "rail transportation property."

The only issue before the Court is whether privately owned specialty cars are equipment "owned or used" by rail carriers regulated by the ICC. The phrase "owned or used" implies an expansive scope of coverage. The plain meaning of "use" is "to

---

1. To a lesser extent, some of the car companies provide specialty cars directly to the railroads on a daily basis through what are known as "pooling" arrangements.

2. LSA–R.S. 47:1851 M recites as follows:

   M. "Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company. For each barge line, towing company or private car

company, only the major movable property owned or used but not otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.

3. In *Louisville & N. R. Co. v. Louisiana Tax Commission*, 498 F.Supp. 418 (M.D.La.1980), the district court has already held that article VII, section 18 of the Louisiana Constitution violates the 4–R Act when applied to property directly owned by rail carriers. *See also Ogilvie v. State Board of Equalization*, 657 F.2d 204 (8th Cir. 1981); *Trailer Train Co. v. State Board of Equalization*, 511 F.Supp. 553 (N.D.Cal. 1981).

put into action or service or to avail oneself of." Pursuant to section 11503(a)(3), the ICC has also defined rail transportation property broadly:

Rail transportation property is all property and other assets, *irrespective of ownership* that comprise the entire operating unit devoted to rail transportation service.

49 C.F.R. § 1201(2i)(33).

 The rolling stock of private car companies is clearly an integral and necessary part of the "entire operating unit devoted to rail transportation services." Under 49 U.S.C. § 11122, the ICC is authorized to regulate the lease arrangements between the private companies and the shippers. The ICC also regulates the tariffs that shippers pay to railroads and that the railroads pay to the private car companies. Without a leasing arrangement for specialty cars, rail carriers would be unable to meet their obligations under 49 U.S.C. § 11121.

The legislative purpose of the Act is to prevent a state from unfairly burdening interstate carriers regulated by the ICC.[4] In view of this comprehensive regulatory scheme, it makes little sense to deny private car companies the same protection against discriminatory taxation already provided to other railroad transportation property. Accordingly, the judgment of the district court, 511 F.Supp. 610, is affirmed.

AFFIRMED.

---

**4.** The legislative purpose of 11503(b) is extensively discussed in *Atchison Topeka and Santa* *Fe Railroad Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981).