710 F.2d 468
 TRAILER TRAIN COMPANY, a corporation, and Railbox Company, a
corporation, Appellees,
v.
STATE BOARD OF EQUALIZATION OF the STATE OF NORTH DAKOTA and
Byron L. Dorgan, as Tax Commissioner of the State
of North Dakota, Appellants.
TRAILER TRAIN COMPANY, a corporation, and Railbox Company, a
corporation, Appellees,
v.
STATE BOARD OF EQUALIZATION OF the STATE OF NORTH DAKOTA and
Kent Conrad, as Tax Commissioner of the State of
North Dakota, Appellants.
 Nos. 82-1950, 82-1951.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1983.
Decided June 29, 1983.
 
 William P. Pearce, Pearce, Anderson & Durick, Bismarck, N.D., Terrence J. Benshoof, Asst. Gen. Counsel, Chicago, Ill., Everett B. Gibson, James W. McBride, Gregory G. Fletcher, Laughlin, Halle, Clark, Gibson & McBride, Memphis, Tenn., for appellees.
 Robert W. Wirtz, Asst. Atty. Gen., for the State of N.D., Bismarck, N.D., for appellants.
 George Deukmejian, Atty. Gen. of the State of Cal., Julian O. Standen, Deputy Atty. Gen., San Francisco, Cal., for amicus curiae Bd. of Equalization of the State of Cal.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and RENNER,* District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The North Dakota Tax Commissioner and State Board of Equalization appeal from the district court's order granting summary judgment in favor of Trailer Train Company and Railbox Company on their claims for ad valorem tax relief for the 1979 and 1980 tax years. The district court held that North Dakota's practice of taxing the personal property of Trailer Train and Railbox, while exempting the personal property of other commercial and industrial taxpayers in North Dakota, resulted in tax discrimination against railroad transportation property in violation of section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. Sec. 11503.[1] We affirm.
 
 I.
 BACKGROUND
 
 2
 Trailer Train is a corporation engaged in the business of providing standardized railroad flat cars to railroad companies. Railbox, a wholly-owned subsidiary of Trailer Train, is engaged in the business of providing standardized boxcars to railroads. Trailer Train and Railbox both operate under a car-pooling arrangement approved by the Interstate Commerce Commission (ICC).
 
 
 3
 Trailer Train was formed by thirty-two operating railroads, each of which became a shareholder in Trailer Train and a guarantor of certain of its debt obligations.[2] These railroads organized Trailer Train to meet the demand for a nationwide fleet of flat cars. Similarly, Railbox was organized to meet a chronic shortage of standard-design, wide-door boxcars of general usefulness. Some of Trailer Train's railroad shareholders guaranteed certain of Railbox's debt obligations.
 
 
 4
 Trailer Train and Railbox (hereafter collectively referred to as the "Carlines") acquire railroad cars by lease or purchase and furnish them, pursuant to car-service contracts, to railroads operating throughout the United States. Under these car-service contracts, the Carlines provide sufficient numbers of cars to meet the railroads' demands in exchange for the railroads' payment of a per diem charge (and for some cars, an additional per mile charge), for the use of each car furnished. The ICC regulations and the car-service contracts require the Carlines to keep their rates for car service at the "lowest level possible." The Carlines retain responsibility for the expenses and maintenance of all cars in their pool, including ad valorem taxes.
 
 
 5
 Under North Dakota law, the Carlines' property is subject to valuation by the Tax Commissioner for ad valorem tax purposes and assessment by the State Board of Equalization (State Board).[3] Because neither Trailer Train nor Railbox own any real property, only their personal property--the cars furnished to operating railroads--are subject to taxation in North Dakota.
 
 
 6
 In determining each Carlines' assessment in this case, the Tax Commissioner ascertained the total market value of all cars owned or leased by the Carlines, and apportioned a part of the total market value to the State of North Dakota for ad valorem tax purposes. The State Board then determined a percentage "level of assessment" for the Carlines' property and multiplied the market value of each Carlines' property in North Dakota by the "level of assessment." For the 1979 tax year, the "level of assessment" for both Trailer Train and Railbox was 16.8 percent of the value of their property in North Dakota; for the 1980 tax year, the "level of assessment" was 13.29 percent of value.[4]
 
 
 7
 The real property of non-utility commercial and industrial taxpayers is assessed by local assessing officials. N.D.Cent.Code Sec. 57-02-03. The personal property of these locally-assessed commercial and industrial taxpayers in North Dakota, with the exception of oil or gas refining machinery and equipment, is exempt from taxation. Id. at Secs. 57-02-08, 57-02-04(3). Thus, the "level of assessment" of virtually all locally assessed business personal property in North Dakota is zero.
 
 
 8
 In April, 1980, Trailer Train and Railbox filed the first of two complaints against the State Board and Tax Commissioner (hereafter collectively referred to as the "State Board"), alleging that the ad valorem tax assessment against the Carlines' personal property violated section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. Sec. 11503 (hereafter referred to as "section 306"), which prohibits state tax discrimination against rail transportation property. The Carlines sought (1) a declaration that the State Board's refusal to exempt their rail cars from ad valorem taxation for the 1979 tax year violated section 306, and (2) a preliminary and permanent injunction prohibiting the State Board for collecting ad valorem taxes on those rail cars for the 1979 tax year. In May, 1980, the district court ordered the Carlines to deposit the disputed taxes with a North Dakota bank and preliminarily enjoined the State Board from collecting any ad valorem taxes based upon its assessment of the Carlines' rail cars for the 1979 tax year.
 
 
 9
 In March, 1981, the district court stayed any decision on the Carlines' motion for summary judgment on their claim for the 1979 tax year pending this Court's resolution of the appeal in Ogilvie v. State Board of Equalization of North Dakota, 492 F.Supp. 446 (D.N.D.1980). In April, 1981, the Carlines filed a second complaint seeking the same relief for the 1980 tax year that they had sought for the 1979 tax year. Shortly thereafter, the district court preliminarily enjoined the State Board from collecting ad valorem taxes on the Carlines' rail cars for the 1980 tax year and again ordered that the disputed taxes be deposited with a North Dakota bank.
 
 
 10
 In March, 1982, the district court granted summary judgment in favor of the Carlines on their consolidated claims for the 1979 and 1980 tax years. It held that upon the basis of the stipulated facts, the State Board's practice of taxing the Carlines' personal property, while exempting from taxation the personal property of other commercial and industrial taxpayers in North Dakota, is prohibited by section 306(1)(d).
 
 II.
 DISCUSSION
 
 11
 The sole issue presented here is whether the district court erred when it held that section 306(1)(d) applied to the Carlines. Section 306(1)(d) states in pertinent part:
 
 
 12
 Sec. 28. (1) Notwithstanding the provisions of section 202(b), any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.
 
 
 16
 Pub.L. No. 94-210, Sec. 306, 90 Stat. 31, 54 (1976).
 
 
 17
 The State Board contends that the Carlines are not entitled to the protection afforded by section 306(1)(d) because neither Trailer Train nor Railbox is a "common carrier by railroad."[5] The State Board urges this Court to adopt the position taken by the federal district court for the Northern District of California which held that
 
 
 18
 Congress expressly limited the applicability of section 306(1)(d) to discriminatory treatment of a "common carrier by railroad." In the present case, the plaintiffs concede that they are not common carriers by railroad. Therefore, the statutory prohibition does not apply to these plaintiffs.
 
 
 19
 Trailer Train Co. v. State Board of Equalization, 538 F.Supp. 509, 513 (N.D.Cal.1982). We cannot accept this view.
 
 
 20
 Section 306(1)(d) provides that a state may not impose any tax which "results in discriminatory treatment of a common carrier by railroad." (Emphasis added.) The district court here properly recognized that because of the close relationship between the Carlines and common carriers by railroad, tax discrimination against Trailer Train and Railbox results in discriminatory treatment of common carriers by railroad. The district court also properly recognized that in order to effectuate the purposes of section 306, the rail "transportation property" of the Carlines must be protected to the same extent as the rail "transportation property" of the common carriers themselves.
 
 
 21
 The close relationship between Trailer Train, Railbox and common carriers by railroad is amply demonstrated by the record in this case. First, Trailer Train and Railbox are owned by most of the major railroad systems in the United States. Second, virtually all of the major trunk and shortline railroad carriers in the United States contract with Trailer Train and Railbox for car service. Third, the common carriers by railroad that participate in the pooling arrangement rely upon Trailer Train and Railbox to furnish cars at the lowest possible rates. Finally, common carriers that participate in the pooling arrangement are relieved of the financial burden of purchasing, leasing, managing, controlling and accounting for substantial numbers of their own cars. Consequently, to the extent that discriminatory state ad valorem taxation imposes a financial burden on Trailer Train and Railbox, that burden is plainly transferred to, and shared by, common carriers by the railroad.
 
 
 22
 In short, because tax discrimination against the Carlines' railroad cars adversely affects common carriers by railroad as directly and immediately as tax discrimination against the railroad cars of the carriers themselves, and because section 306(1)(d) prohibits any state tax which "results in discriminatory treatment of a common carrier by railroad," the plain language of the statute supports the district court's holding in this case. See generally General American Transportation Corp. v. Louisiana Tax Commission, 680 F.2d 400 (5th Cir.1982) (discussing the close relationship between operating railroads and private rail car companies that furnish specialty cars to shippers).
 
 
 23
 Moreover, the district court's decision is fully consistent with the legislative purpose underlying section 306. In enacting the Railroad Revitalization and Regulatory Reform Act of 1976, Congress plainly intended to revitalize all parts of the railroad industry to facilitate and improve the provision of railroad service to the public. See S.Rep. No. 94-499, 94th Cong., 1st Sess. 1-8 (1975), reprinted in 1976 U.S.Code Cong. & Ad.News 14-21 (1976). As part of its revitalization plan, Congress included section 306 in the Act to specifically remedy discriminatory taxation against railroads. See Ogilvie v. State Board of Equalization of North Dakota, 657 F.2d 204 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981) (discussing legislative history and purpose of section 306).
 
 
 24
 In order to give effect to that legislative purpose, we held in Ogilvie that section 306(1)(d) prohibited the State Board from assessing an ad valorem tax against the railroads' personal property. Id. at 208-210. Similarly, in this case, because of the close relationship between the Carlines and the common carriers by railroad, section 306(1)(d) must be construed to apply to the Carlines so as to not defeat Congress's intention "to prevent tax discrimination against railroads in any form whatsoever." Id. at 210.[6]
 
 
 25
 In General American Transportation Corp. v. Louisiana Tax Commission, supra, 680 F.2d at 403, the Fifth Circuit recognized that private rail car companies should be treated the same as operating railroads for purposes of section 306. Although the Fifth Circuit's decision relied on section 306(1)(a) to find that a private rail car company was entitled to an assessment reduction, its analysis is pertinent here:
 
 
 26
 The rolling stock of private car companies is clearly an integral and necessary part of the "entire operating unit devoted to rail transportation services."
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 The legislative purpose of the Act is to prevent a state from unfairly burdening interstate carriers regulated by the ICC. In view of this comprehensive regulatory scheme, it makes little sense to deny private car companies the same protection against discriminatory taxation already provided to other railroad transportation property. [Footnote omitted.]
 
 
 30
 Id.
 
 
 31
 In summary, both the plain language of section 306 and the clear legislative purpose underlying it demonstrate that subdivision (1)(d) proscribes the State Board's discriminatory practice of taxing the Carlines' personal property, while exempting from taxation the personal property of other commercial and industrial taxpayers in North Dakota. The district court's judgment, therefore, is affirmed.
 
 
 
 *
 The Honorable ROBERT G. RENNER, District Judge, United States District Court for the District of Minnesota, sitting by designation
 
 
 [1]
 Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94-210, Sec. 306, 90 Stat. 31, 54 (1976), is recodified at 49 U.S.C. Sec. 11503. The parties to this case agree, and this Court acknowledged in Ogilvie v. State Board of Equalization of North Dakota, 657 F.2d 204, 206 n. 1 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), that the language of section 306 as originally enacted governs issues of statutory construction under 49 U.S.C. Sec. 11503
 
 
 [2]
 As a result of bankruptcies and mergers, the number of railroad owners has been reduced to twenty-seven
 
 
 [3]
 Under North Dakota law, the State Board is responsible for both valuing and assessing the Carlines' property. N.D.Cent.Code Secs. 57-06-05, 57-13-02. The Tax Commissioner makes a tentative valuation of that property, id. at Secs. 57-06-11, 57-06-12, but the State Board retains the power to reject that tentative valuation, or accept it "in whole or in part." Id. at Sec. 57-06-15. In this case, the State Board apparently adopted the Tax Commissioner's valuation of the Carlines' personal property for the 1979-1980 tax years
 
 
 [4]
 The North Dakota legislature has since amended the tax laws to set levels of assessment by statute. N.D.Cent.Code Sec. 57-02-27
 
 
 [5]
 Trailer Train and Railbox concede that they are not "common carrier[s] by railroad" within the meaning of section 306
 
 
 [6]
 Because section 306 generally proscribes various types of tax discrimination against rail "transportation property," the fact that the Carlines' personal property, like the personal property of the common carriers themselves, is "transportation property" within the meaning of section 306 also indicates that Congress intended subdivision (1)(d) to apply to private rail car companies. See ICC Docket No. 36873, Definition of Rail Transportation Property (Dec. 13, 1978) (explicitly including personal property of Trailer Train and Railbox within the definition of "transportation property" for purposes of section 306). Accord Ogilvie v. State Board of Equalization of North Dakota, supra, 657 F.2d at 208-209
 Section 306(1)(d), rather than proscribing specific types of tax discrimination against "transportation property" like subdivisions (1)(a) through (c), prohibits "the imposition of any other tax which results in the discriminatory treatment of a common carrier by railroad." As the Fifth Circuit noted in Alabama Great Southern Railroad Co. v. Eagerton, 663 F.2d 1036, 1041 (11th Cir.1981), however, Congress's purpose in changing the language of section 306 from "transportation property" in subdivisions (1)(a) through (1)(c) to "any other tax" and "common carrier by railroad" in subdivision (1)(d) was most likely to broaden, not narrow, the scope of the section by making it applicable to all forms of state taxation rather than just property taxation.