**FRUIT GROWERS EXPRESS COMPANY**

v.

**John H. NORBERG, Tax Administrator.**

**No. 81–185–M.P.**

Supreme Court of Rhode Island.

Feb. 17, 1984.

Alfred S. Lombardi, William P. Robinson, III, Edwards & Angell, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., Perry Shatkin, Chief Legal Counsel, Div. of Taxation, Providence, for respondent.

OPINION

KELLEHER, Justice.

We have issued a statutory writ of certiorari pursuant to the pertinent provisions of the Administrative Procedures Act, to wit, G.L.1956 (1977 Reenactment) § 42–35–16, to review a District Court justice's affirmation of the tax administrator's denial of a taxpayer's request for a tax refund.

The pertinent details of this controversy have been set forth in an agreed statement of facts which was initially presented at a hearing conducted on the administrative

level. The taxpayer (Fruit Growers or taxpayer) is a Delaware corporation whose headquarters is situated in the District of Columbia and whose entire stock is owned by twelve major railroad companies. Fruit Growers owns and is obligated to furnish to some sixty-one railroad carriers specialty cars that permit the interstate shipment of perishable commodities, both fresh and frozen, throughout the United States. The commodities are conveyed by rail in two types of containers, freight cars and so-called piggyback trailers, which are mounted on specially equipped flat cars. Both the freight cars and the trailers contain a refrigeration system that is designed to maintain the interior temperatures within a range of zero to seventy degrees Fahrenheit, depending upon the commodity transported and external temperatures. The refrigeration unit uses diesel fuel to power the generator, which in turn produces the electricity that serves as the source of power for the refrigeration apparatus.

General Laws 1956 (1968 Reenactment) § 31–36–15 provided that even though a special tax was due on all fuel sold within Rhode Island, that tax was refundable if the fuel was used for certain designated purposes. Fruit Growers claims that the fuel used to power its refrigeration units is refundable under that portion of § 31–36–15 which permitted the taxpayer to be reimbursed for a tax imposed on fuel utilized "for the operation of railroad transportation equipment on fixed rails or tracks."

Years ago, in 1968, the Division of Taxation (division) issued an opinion to Fruit Growers' supplier, stating that any fuel the supplier sold to Fruit Growers would be eligible for a tax refund under § 31–36–15. Things went smoothly for the next eight years. However, in 1976 the division apparently had a change of heart and on March 29, 1976, sent a second unsolicited opinion to the supplier, in which communication the supplier was advised that the division's 1968 communication was erroneous because the taxpayer did not fall within the reimbursement provisions set forth in § 31–36–15.

The division softened the blow by making it clear that its second opinion was to be applied solely to Fruit Growers' future purchases. Thus, when Fruit Growers, on December 15, 1976, filed with the division a claim for refund of fuel tax paid during the period April 21 to October 31, 1976, of some $3,798, that claim was denied. The claim indicates that during the period in question, Fruit Growers purchased from its supplier 37,987 gallons of diesel fuel, which was subject to a tax of ten cents on the gallon.

In due course, Fruit Growers exhausted its administrative remedies without success, suffered a similar fate before the District Court, and is presently before us in a two-pronged appeal in which it argues that the claim clearly falls within the language of the reimbursement statute, and if not, the tax is unconstitutional because it constitutes an undue burden on interstate commerce. For reasons that will become apparent, we will limit our consideration to the question of the statute's ambiguity.

The District Court justice first found that the reimbursement language was ambiguous; he then proceeded to construe the language strictly against the taxpayer. In taking this tack, the trial justice was of the belief that since the language granting a refund was akin to language granting an exemption, any ambiguity in the statute would be construed strictly against the taxpayer. The trial justice was of the belief that the reimbursement would be warranted if the fuel was consumed in a "function integrally related" to the use of the railroad's transportation equipment. According to the trial justice, fuel consumed during operational functions that were merely "incidental" to the use of the equipment would not come within the reach of the statute. The trial justice also believed that there was merit in the administrator's argument that if the taxpayer's position was upheld, refunds would be due for fuel consumed in cooking the food served in the railroad's dining cars. The tax administrator in his decision declared that the General Assembly "obviously" intended the excep-

tion to be applied to fuel used in the "propulsion" of railroad equipment.

■■ Recently in *In re Dina N.*, R.I., 455 A.2d 318 (1983), we noted that the construction of statutes is a matter reserved for the courts, with this court serving as the final arbiter on questions of statutory construction. We also emphasized that when the language of a statute in question is clear and unambiguous and does not contradict an evident legislative purpose, there is no need for statutory construction or the use of interpretive aids. The statute, we said, must be applied literally by giving the words their ordinary and plain meaning. We feel that the principle applies to the controversy now under consideration.

In 1976 Fruit Growers purchased its diesel fuel from a Providence supplier called Vendetti Bros. Oil Service, Inc. The authority for the tax imposed on that purchase was and still is to be found in G.L. 1956 (1982 Reenactment) chapter 36 of title 31. Chapter 36 is entitled "Gasoline Tax." However, the fuel that is subject to the tax was and still is defined in § 31–36–1(a) as including "gasoline, benzol, naphtha, and other volatile and inflammable liquids * * * used or suitable for use for operating or propelling motor vehicles using internal combustion type of engines * * *."

The reimbursement provision upon which Fruit Growers relies has been the subject of a legislative switch that occurred subsequent to the initiation of this controversy. The General Assembly at its January 1977 session enacted P.L.1977, ch. 154, and amended § 31–36–15 by striking from its reimbursement provisions the language relating to rail-transportation equipment and at the same time amended § 31–36–13 by granting a tax exemption for fuel that is used "solely for the operation of railroad transportation equipment on fixed rails or tracks * * *."

Since the 1977 legislation cannot be operative on the taxpayer's 1976 refund claim, we must examine the refund statute as it existed in 1976. The pertinent statute is to be found in G.L.1956 (1968 Reenactment)

§ 31–36–15. It authorizes the payment of a refund when the taxable fuel is used in any one of the following enumerated circumstances. We shall discuss the particular circumstances chronologically, that is, beginning with the first taxpayers mentioned in the statutory predecessor of § 31–36–15 who were afforded the opportunity for a refund.

We begin with a look at 1939. With the enactment of P.L.1939, ch. 746, commercial fishermen, lumbermen, farmers, and manufacturers were afforded the opportunity to seek a reimbursement. The fishermen, the lumbermen, and the farmers could seek a refund for fuel used in "propelling" boats, stationary engines, or tractors. Manufacturers could be reimbursed for fuel containing hydrocarbons such as benzol when the fuel was consumed during the manufacturing process. A year later, by means of P.L.1940, ch. 871, the Legislature broadened the farmers' eligibility for a refund by amending the 1939 legislation so that farmers who used fuel for the "operation or propulsion" of their equipment could seek a refund.

Five years later, in P.L.1945, ch. 1600, lumbermen and farmers were afforded identical relief. All mention of "propulsion" or "propelling" was deleted, and the rebate for members of either group was for fuel used in the "operation" of their off-highway equipment. In 1948, through P.L. 1948, ch. 2095, refund eligibility was conferred upon "persons, firms, or corporations" using fuel "for marine purposes" or "for the operation of airplanes." One year later the railroad industry entered the picture when the "persons, firms, or corporations" wording of the 1948 legislation was amended as it related to airplanes so that refund eligibility was afforded to any "persons, firms or corporations who or which shall use fuel for the operation of railroad transportation equipment on fixed rails or tracks or airplanes * * *." Public Laws 1949, ch. 2369, § 1.

Subsequent to 1949 the General Assembly saw fit to give other occupations and certain governmental agencies the benefit of the refund provisions of § 31–36–15, but their inclusion is totally irrelevant to the issue pending before us.

This court is not aware of what the energy source was that the chefs used when preparing the cuisine to be offered to the dining cars' patrons during the years in question. However, it is clear from our consideration of the ten-year period of development of the refund provisions of § 31–36–15 that there were some times when the General Assembly spoke in terms of "propulsion" and other times when it spoke in terms of "operation." It is clear that in 1948 and again in 1949 the Legislature spoke in terms of "operation." In 1948 it afforded an opportunity for a rebate for fuel consumed in the "operation of airplanes" and a year later afforded the same relief to those whose fuel was employed in the operation of railroad transportation equipment on fixed rails or tracks. Conceivably, if propulsion was uppermost in the General Assembly's mind in 1949, it might have used the term "propulsion"; or in opting for the word "operation," it could have employed the phrase "operation of a locomotive." It did neither, and we shall not speculate about its ultimate choice of language.

■ Interstate rail carriers are obligated to provide facilities and equipment that are reasonably necessary to furnish safe and adequate service on American railroads. *General American Transportation Corp. v.* *Louisiana Tax Commission,* 680 F.2d 400, 401 (5th Cir.1982). This obligation is often discharged by the furnishing of a variety of unusual services through the use of such specialized equipment as tank cars, hopper cars, or refrigerated cars. A railroad is obligated to do more than transport passengers. It must also transport all sorts of cargo. Here, through the employment of its diesel-powered mechanical marvels, Fruit Growers ensures that perishable goods arrive at their appointed destination in a "perishable" rather than in a "perished" state.

■ In their agreed statement of facts, the taxpayer and the tax administrator concede that the refrigerated freight cars and trailers are an integral part of a railroad's operation. Consequently, we have no doubt that the more than 37,900 gallons of fuel oil used by Fruit Growers during the period in question in 1976 fall squarely within the railroad-operation reimbursement language found in § 31–36–15.

The taxpayer's petition for certiorari is granted, the judgment entered in the District Court is quashed, and the papers in this case are ordered returned to the District Court with our decision endorsed thereon.